JOE DARRAH, INC., Appellant

v.

**ZONING HEARING BOARD OF SPRING GARDEN TOWNSHIP and Spring Garden Township.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Jan. 26, 2007.

Decided July 9, 2007.

---

Larry C. Heim, York, for appellant.

David A. Jones, II, York, for appellee.

Evan C. Pappas, Harrisburg, for amicus curiae, PA Automotive Recycling Trade Society.

BEFORE: LEADBETTER, President Judge, PELLEGRINI, Judge, and LEAVITT, Judge.

OPINION BY Judge LEAVITT.

Joe Darrah, Inc. appeals from an order of the Court of Common Pleas of York County (trial court), affirming a decision of the Zoning Hearing Board of Spring Garden Township (Board) to deny Darrah's request to reclassify its operations for purposes of regulation by the Township. Dar-rah held a zoning permit to operate a "junkyard," but it requested the Board to declare that Darrah was actually a "processing establishment" within the meaning of The Spring Garden Township Zoning Ordinance (Zoning Ordinance).[1] Darrah made this request in the belief that it would no longer have to comply with the Township's ordinance that regulated the operations of junkyards. Because we conclude the Board lacked jurisdiction to issue an advisory opinion, we vacate the order of the trial court.

We begin with a review of the facts material to this case. Darrah, doing business as "J & K Salvage," leases property located at 1099 King's Mill Road, Spring Garden Township, York County, which consists of approximately 5.7 acres, in a district zoned for industrial use, called the Industrial Park district. In 1997, William Kirkendall, owner of the property, was granted a special exception to operate a junkyard on the premises, with the condition that he comply with Chapter 13 of the Spring Garden Township Code (Code), which chapter is commonly referred to as the Spring Garden Junkyard Ordinance (Junkyard Ordinance). Reproduced Record at 102a. (R.R. ____).

On July 21, 1999, pursuant to the Junkyard Ordinance, Darrah obtained a license from Spring Garden Township to operate a junkyard on the King's Mill property. On February 11, 2000, Darrah received permission from the Planning Commission to place and operate a shredding facility on the property. The shredding facility, which cost approximately $3 million to erect, is the size of two football fields; on average it shreds 300 to 500 cars or 750 tons of material a day.

In 2005, after a fire on the premises, Spring Garden Township sought to enforce

---

1. SPRING GARDEN TOWNSHIP ZONING ORDINANCE, YORK COUNTY, PA. (2000).

a provision of the Junkyard Ordinance that limits the height of materials stored on the property to six feet. In response, Darrah filed a request with the Zoning Officer to have the property's use reclassified from that of a "junkyard" to a "processing establishment." Under Section 207 of the Zoning Ordinance, a "processing establishment" is allowed by right in an industrial park zone; a junkyard is permitted only by special exception.[2] The Zoning Officer refused Darrah's request, prompting Darrah to file an appeal with the Board seeking to "have the classification of the tract changed from junkyard ... to processing establishment...." R.R. 89a.

At the hearing before the Board, Harry J. Darrah, president of Darrah, testified. He stated that Darrah does not store or accumulate cars, and it does not sell used cars, car parts or any other materials on the premises; the property is used primarily for shredding vehicles.

Mr. Darrah described the business as follows. Approximately 150 truckloads of cars, crushed cars, appliances, tractor trailers and other industrial metal are delivered daily. Upon arrival, the materials are dumped onto concrete pads in piles up to 15 feet high, where they await removal of dangerous components, such as car batteries and gasoline tanks. After this initial processing, the remaining scrap material is fed into the shredding facility, which reduces the material into five inch pieces, "like your basic tree trimming shredder." R.R. 23a. The shredded pieces are then separated into steel and nonferrous mate-rials, such as copper, aluminum, brass, stainless steel and "fluff." *Id.* The separated materials are then dumped onto other concrete pads in piles of up to 30 feet in height where they remain until they are loaded onto railroad cars or trucks for delivery to purchasers. Materials move through the shredding processes on site in no more than 72 hours.

Counsel for Darrah stated that the property complied with every provision of the Zoning Ordinance, but not the height limits contained in the Junkyard Ordinance. He explained that if Darrah were "characterized as a processing establishment, [it would] not have the codified ordinance restriction on [it] of six feet in height of our material." R.R. 37a. The Board expressed doubts about what it could do for Darrah, and Darrah's counsel responded, "I'm not asking that you change the [junkyard] ordinance ... I'm asking under the zoning ordinance we have the right to ask for an interpretation that we be characterized the way we truly believe we are...." *Id.*

Thereafter, the Board declined to "reclassify" Darrah. It did so on the basis of the Zoning Ordinance, which defines a "junkyard" as follows:

> *[A]ny establishment or place where a person stores or accumulates wrecked, abandoned or junked motor vehicles, machinery or equipment, scrap metal or materials for the purpose of salvaging parts therefrom for use or resale, or the destruction of the same for resale as*

---

2. Section 207 of the Zoning Ordinance states, in relevant part, as follows:

   207.2 *Uses by Right.* The following principal uses are permitted by right in the IP zone:

   D. Processing Establishment.

   ❖ ❖ ❖

   207.3 *Uses by Special Exception.* The following principal uses shall be permitted as special exceptions when authorized by the Zoning Hearing Board ...

   C. Junkyard.

   R.R. 181a–182a.

*scrap.* Any tract of land used for such purposes, regardless of ownership, shall be considered a separate "junkyard".

ZONING ORDINANCE, § 103.3; R.R. 159a (emphasis added). The Board also noted that the Junkyard Ordinance defines a "junkyard" as: "any place where junk as herein defined is stored or accumulated." SPRING GARDEN TOWNSHIP CODE, Chap. 13, § 701. Supplemental Reproduced Record at 1b. The Junkyard Ordinance defines "junk" to be

> *any discarded or salvageable article or material* including, but not limited to, *scrap metal,* paper, rags, glass, containers, scrap wood, motor vehicles, trailers, machinery and equipment, with the exceptions of farm machinery and mobile homes or house trailers which are occupied or are properly placed and planned for occupancy.

*Id.* (emphasis added).[3]

The undisputed facts were that Darrah "salvages" and "destroys" scrap metal and other materials for resale, which activities fall within the definition of "junkyard" in Section 103.3 of the Zoning Ordinance and in Section 701 of the Junkyard Ordinance. The fact that these materials do not stay very long on the property was not relevant in the Board's view because neither ordinance speaks to the length of time that materials must be stored in order to constitute a junkyard. Thus, the Board concluded that Darrah's operations fit the definition of "junkyard" found in Section 103.3 of the Zoning Ordinance. The trial court, taking no new evidence, affirmed the decision of the Board, having found no error of law or abuse of discretion in its application of the Zoning Ordinance.

On appeal, Darrah presents one issue for our consideration. It contends that the Board and trial court erred in concluding that the activities performed on the property are those of a junkyard, as defined in the Zoning Ordinance. Darrah contends that the evidence demonstrates that the property is being used as a processing establishment. Further, it argues that because the term "processing establishment" is not defined in the Zoning Ordinance, courts must give a landowner the benefit of the interpretation least restrictive of its use and enjoyment of the property.

■ We need not address Darrah's issue because we conclude that the Board lacked jurisdiction.[4] Zoning boards are administrative agencies created by the General Assembly. *Golla v. Hopewell Township Board of Supervisors,* 69 Pa. Cmwlth. 377, 452 A.2d 273, 274 (1982). Their power is limited to that conferred expressly by the legislature, or by necessary implication. Further, the limit to that power must be strictly construed; a doubtful power does not exist. *In re Leopardi,* 516 Pa. 115, 119, 532 A.2d 311, 313 (1987). The question is, then, whether the Board could interpret the Zoning Ordinance in the absence of (1) an application from Darrah for some kind of zoning permit or license or (2) a challenge to the validity of the Zoning Ordinance.

In *H.R. Miller Co., Inc. v. Bitler,* 21 Pa.Cmwlth. 466, 346 A.2d 887 (1975), this Court addressed the power of a zoning hearing board to issue an advisory opinion. In that case, Miller requested a hearing before a zoning board to resolve certain questions of law and fact relating to its quarrying activities. To that end, Miller

---

3. In addition, the Board concluded that Darrah was estopped from claiming it was not a junkyard in light of the fact that it was licensed as a junkyard.

4. This court may raise the issue of jurisdiction sua sponte. *Davis v. City of Philadelphia,* 702 A.2d 624, 625 (Pa.Cmwlth.1997).

submitted five questions to be addressed by the board. After extensive hearings on the matter, the board issued a decision addressing each of the five submitted questions and deciding each adversely to Miller. Thereafter, Miller applied for permits to expand its quarrying activities, and they were refused by the board. In response, Miller filed an action in mandamus to compel the issuance of the permits. Miller argued that because the board had issued its opinion on the five submitted questions 98 days after the last day of hearing, the opinion was not timely rendered. Accordingly, the questions had to be deemed approved in favor of Miller.

This Court held that the zoning board lacked authority to issue the advisory opinion requested by Miller. We explained that under Section 909.1(a) of the Pennsylvania Municipalities Planning Code (MPC), 53 P.S. § 10909.1(a),[5] zoning hearing boards are charged to render final adjudications on (1) challenges to the validity of a zoning ordinance, and (2) appeals of the grant or denial of a permit, a variance or a special exception. *Miller*, 346 A.2d at 888. The board lacked jurisdiction to resolve Miller's questions in the abstract; it could act only when Miller sought and was refused a permit.

In *Hopkins v. North Hopewell Township Zoning Hearing Board*, 154 Pa. Cmwlth. 376, 623 A.2d 938 (1993), this

Court again addressed the authority of a zoning board to interpret an ordinance in the absence of a request for specific relief. In Hopkins, the landowners had submitted an application for a building permit and an application for subdivision approval. After the building permit was granted and while the subdivision application was pending, the landowners filed a "Request for Interpretation" with the zoning hearing board, presenting ten questions for the board to address.[6] The zoning board issued its decision, but in doing so expressed misgivings about its ability to render such a decision because the "matter [did] not appear to fit" those matters over which it had jurisdiction. *Id.* at 939. The trial court held that the zoning hearing board lacked the authority under the MPC to grant the relief the landowners requested, *i.e.*, an interpretation of the zoning ordinance, and this Court affirmed.

■ As in *Miller* and in Hopkins, Darrah did not file a request for a permit, variance, special exception, or challenge the Zoning Ordinance as invalid—the only matters over which the Board has jurisdiction.[7] Rather, Darrah requested the Board to "reclassify" Darrah's use from that of a junkyard to that of a "processing establishment." Darrah's request can only be characterized as a request for an advisory opinion.[8] Indeed, Darrah's counsel

---

5. Act of July 31, 1968, P.L. 805, *as amended.* Section 909.1 added by the Act of December 21, 1988, P.L. 1329, 53 P.S. § 10909.1.

6. In the interim, the board of supervisors denied the landowners' subdivision plan, and the landowners filed an appeal, which they subsequently discontinued.

7. Darrah's application stated that it was requesting an "Interpretation/Appeal." R.R. 89a.

8. The dissent contends that the Zoning Officer's refusal to reclassify Darrah's business as

a processing establishment is a "determination" appealable to the Board. If a zoning board may not issue an advisory opinion, then neither can its zoning officer. The principle of *Miller* and Hopkins cannot be side-stepped simply by first requesting an opinion from a zoning officer. Further, a "reclassification" is nowhere addressed in the MPC. Darrah sought this "determination" in an effort to lock in a defense to the Township's threatened enforcement action. When and if that action takes place, Darrah may litigate its theory that it is not a junkyard. *See, e.g., Berger v. Commonwealth, Department of Environmental*

expressly advised the Board that Darrah was seeking an "interpretation" of the way that its activities were characterized. Because the Board lacked authority to render such an advisory opinion, its decision must be vacated.

For these reasons, the order of the trial court is vacated and the matter remanded for the trial court to vacate the June 28, 2005, decision of the Board.

### ORDER

AND NOW, this 9th day of July, 2007, the order of the York County Court of Common Pleas, filed August 17, 2006, in the above-captioned matter is hereby vacated, and this matter is remanded with the direction that the June 28, 2005, decision of the Zoning Hearing Board of Spring Garden Township be vacated.

Jurisdiction relinquished.

DISSENTING OPINION BY President Judge LEADBETTER.

I must respectfully dissent. Given that the Township is seeking to enforce the height provision of the junkyard ordinance, I believe the Zoning Officer's refusal to reclassify the business use on this property is a "determination" appealable to the Zoning Hearing Board under Section 909.1(a)(3) of the Municipalities Planning Code, Act of July 31, 1968, P.L. 805, added by the Act of December 21, 1988, P.L. 1329, 53 P.S. § 10909.1(a)(3) and *North Codorus Township v. North Codorus Township Zoning Hearing Board,* 873 A.2d 845 (Pa.Cmwlth.2005). Therefore, the Zoning Hearing Board did have jurisdiction and we should reach the merits.

*Resources,* 42 Pa.Cmwlth. 206, 400 A.2d 905, 907 (1979) (holding that declaratory relief is not appropriate for "determination" of rights in anticipation of enforcement action that may never occur).