IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Board of Commissioners of Cheltenham Township, | : | |
| | : | |
| Appellant | : | |
| | : | |
| v. | : | No. 1317 C.D. 2016 |
| | : | Argued: May 1, 2017 |
| Hansen-Lloyd, L.P. | : | |

BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
HONORABLE RENÉE COHN JUBELIRER, Judge
HONORABLE MICHAEL H. WOJCIK, Judge

OPINION
BY JUDGE WOJCIK                FILED: July 6, 2017

The Board of Commissioners of Cheltenham Township (Township) appeals from an order of the Court of Common Pleas of Montgomery County (trial court) affirming a decision of the Cheltenham Township Zoning Hearing Board (ZHB), which granted Hansen-Lloyd, L.P.'s (Developer) application for special exception and other zoning relief to construct an age-restricted housing development on its property. In granting the zoning relief, the ZHB applied the ordinance in effect when Developer filed its sketch plan, not the later-adopted ordinance in effect when it filed the application for zoning relief. In this case of first impression, we consider whether, under the Municipalities Planning Code (MPC),[1] the filing of a mandatory sketch plan creates a vested right for consideration of the plan as well as any future zoning applications related thereto

_____

[1] Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §§10101-11202.

under the ordinance in effect when the sketch plan was filed. Upon review, we conclude the MPC creates a vested right for pending plans and affirm.

## I. Background
### A. Relevant Ordinances

In 2008, the Township amended the Cheltenham Code by enacting a zoning ordinance that created an Age Restricted Overlay District in Cheltenham Township (2008 Ordinance). Supplemental Reproduced Record (S.R.R.) at 50b-59b. The 2008 Ordinance also provided that the underlying zoning district shall not apply and that the Age Restricted Overlay District provisions shall supersede other requirements of the zoning ordinance that may be in conflict. The 2008 Ordinance further permitted age-restricted housing and clubhouse uses by special exception. The 2008 Ordinance contained a Preservation Overlay District, which specifically exempted developments with "multiple dwelling houses for the elderly." Reproduced Record (R.R.) at 330a.

In 2010, the Township repealed the 2008 Ordinance. An age-restricted overlay district did not exist in Cheltenham Township for two years.

Then, in 2012, the Township enacted a new ordinance reinstating an Age Restricted Overlay District with more stringent dimensional criteria than the 2008 Ordinance (2012 Ordinance). As a result of the increase in dimensional requirements, the density of such age-restricted residential developments after 2010 was substantially reduced. The 2012 Ordinance continued the requirement of a special exception for age-restricted housing and clubhouses.

### B. Facts

Developer owns a tract of land located at 1777 East Willow Grove Avenue consisting of approximately 43 acres, of which roughly 10 acres are

2

located within Cheltenham Township and the balance is located within neighboring Springfield Township. On December 23, 2008, Developer submitted a mandatory "tentative sketch plan" (sketch plan) to the Township, regarding the 10 acres within Cheltenham Township (property) pursuant to Section 2154-08 of the 2008 Ordinance. The sketch plan proposed to create an age-restricted multi-dwelling development on the property containing eight four-story buildings with 27 units per building for a total of 216 age-restricted units, limited to persons 62 years of age and over. The sketch plan included 388 parking spaces, located under the units and on the surface, as well as a 2,400-square-foot community building or "clubhouse." The sketch plan also proposed to demolish a neglected, gilded-age mansion located on the property.

The Montgomery County Planning Commission (Commission) and the Township reviewed the sketch plan and provided a preliminary analysis of the plan under the 2008 Ordinance. Both the Township and Commission notified Developer that a special exception for the age-restricted housing and variances from the setback and Preservation Overlay District provisions were required. S.R.R. at 41b-42b, 43b-47b. In addition, the Commission advised that the municipal boundary line constituted an imputed property line for purposes of zoning and development and recommended that Developer redesign the site layout so that the setbacks for the property within Cheltenham Township comply with the requirements. S.R.R. at 46b. The Township noted that it asked its solicitor for a ruling on whether the Township could consider the sketch plan prior to the project receiving appropriate zoning relief. S.R.R. at 42b.

From 2009 until 2015, the sketch plan remained pending, while Developer and the Township pursued negotiations regarding the adoption of an

3

ordinance amendment to permit an alternative single-family residential development on the property, preservation of the mansion house, and the incorporation of acreage in both townships into one community. During that time, the Township accepted Developer's numerous offers (approximately 40) to extend the MPC's 90-day review period. Ultimately, on March 18, 2015, the Township adopted a new ordinance amendment that permitted up to seventeen (17) single-family residential dwellings on the property (2015 Ordinance).[2] However, Developer also pursued relief from Springfield Township to adopt a reciprocal ordinance amendment governing a single-family development on the property located within its township, which it declined to adopt, thereby stymieing Developer's alternative single-family residential development. Consequently, negotiations with the Township ended, and Developer sought to move forward with its originally proposed age-restricted development, which was still pending before the Township.

In May 2015, Developer submitted an application for a special exception with the ZHB seeking necessary zoning relief to construct its proposed age-restricted development. In the application, Developer requested relief under the 2008 Ordinance. Specifically, Developer requested a special exception to construct: (1) an age-restricted development (Section 295-242.B.1 of 2008 Ordinance) and (2) a clubhouse (Section 295-242.B.3 of the 2008 Ordinance). Developer also sought a confirmation or interpretation, or in the alternative a variance that: (1) the Township's boundary line is not a property line for the

---

[2] This Ordinance, while in effect when Developer filed its zoning application, has no bearing on the zoning relief requested. The 2015 Ordinance did not alter the 2012 Ordinance's provisions relating to age-restricted development, which are relevant to this dispute.

setback requirements (Section 295.244 of 2008 Ordinance); (2) the requirements of the Preservation Overlay District do not apply (Section 295-187.B of 2008 Ordinance); and, (3) additional parking spaces are not required for the employees and clubhouse use.

The ZHB held hearings on the zoning application. The parties disputed which ordinance governed the zoning application. Developer argued the 2008 Ordinance applied because that was the ordinance in effect when it filed its mandatory sketch plan in 2008. Conversely, the Township asserted the 2012 Ordinance governed because that was the ordinance in effect when Developer filed its zoning application. Developer stipulated that its zoning requests would not satisfy the objective criteria under the 2012 Ordinance. Thus, a determination as to what ordinance applied was critical to the outcome of the zoning application.

Ultimately, the ZHB ruled that the 2008 Ordinance, not the 2012 Ordinance, governed because Developer initiated this process by filing its mandatory sketch plan under the 2008 Ordinance, which vested its right to consideration under that ordinance. The ZHB found that the zoning application involves the same project and plan as the sketch plan, which was filed and accepted by the Township when the 2008 Ordinance was in effect. Relying on Section 508(4)(i) of the MPC, 53 P.S. §10508(4)(i), the ZHB determined that the zoning ordinance in effect when the sketch plan was submitted controlled the application for zoning relief. The ZHB rejected the Township's reliance on Section 917 of the MPC,[3] in support of its position that the 2012 Ordinance applied explaining this section applies only where an applicant seeks zoning relief *first* before filing a subdivision or land development plan, which is not the case here.

---

[3] Added by the Act of June 23, 2000, P.L. 495, *as amended,* 53 P.S. §10917.

The ZHB opined, "When an applicant chooses to proceed with a plan first, followed by a zoning hearing board application, Section 508(4)(i) of the MPC controls, and thus the zoning provisions in effect on December 23, 2008 apply to this Application." ZHB Opinion, 1/28/16, at 13; R.R. at 234a.

Upon determining that Developer met the specific criteria under the 2008 Ordinance applicable to an age-restricted development and clubhouse, the ZHB granted Developer's requests for special exceptions. The ZHB also determined that the municipal boundary line between Cheltenham Township and Springfield Township did not represent a property line from which setbacks must be calculated. Finally, the ZHB found that the provisions of the Preservation Overlay District did not apply to the proposed development and that no additional parking for employees was needed for the clubhouse.

The Township appealed to the trial court, which affirmed, without taking additional evidence. The Township's appeal to this Court followed.[4]

## II. Issues

The Township contends that the ZHB erred by applying the 2008 Ordinance when, at the time Developer filed its zoning application, the 2012 Ordinance was in effect. According to the Township, when a sketch plan applicant fails to file an application for a special exception for six years after the sketch plan is submitted, and the zoning ordinance is amended in the interim, Section 508(4) of

_____

[4] In a land use appeal where the trial court does not take additional evidence, our review is limited to determining whether the ZHB abused its discretion or committed an error of law. *In re Thompson*, 896 A.2d 659, 666 n.4 (Pa. Cmwlth. 2006), *appeal denied*, 916 A.2d 636 (Pa. 2007). As to questions of law, our standard of review is *de novo* and our scope of review is plenary. *Philomeno & Salamone v. Board of Supervisors of Upper Merion Township*, 966 A.2d 1109, 1111 (Pa. 2009).

the MPC does not protect the application for special exception from changes to the zoning ordinance. In addition, the Township asserts that the ZHB erred in determining the municipal boundary line between townships did not constitute a property line for purposes of measuring setbacks within Cheltenham Township. Finally, the Township argues that the ZHB erred in issuing an unauthorized advisory opinion.

### III. Discussion
### A. Applicable Ordinance

First, the Township maintains that the 2012 Ordinance and its Age Restricted Overlay District apply to Developer's zoning application for special exception filed in 2015, rather than the repealed 2008 Ordinance. Section 917 of the MPC provides that when a zoning application for a special exception, which would ultimately result in land development, is filed, the zoning ordinance *in effect at the time the application is filed applies*.

According to the Township, the ZHB's interpretation of Section 508(4) of the MPC in determining that the 2008 Ordinance governs renders Section 917 of the MPC as mere surplusage. The more logical interpretation is that Section 508(4) applies to "plats," which do not require a special exception or conditional use in accordance with the wording of Section 917. Section 917 applies to applications for special exception or conditional uses. Such an interpretation gives meaningful effect to both provisions. The Township maintains its interpretation is supported by *Lehigh Asphalt Paving and Construction Co. v. Board of Supervisors of East Penn Township*, 830 A.2d 1063 (Pa. Cmwlth. 2003).

In addition, relying on *Philomeno & Salamone v. Board of Supervisors of Upper Merion Township*, 966 A.2d 1109 (Pa. 2009), the Township contends that a sketch plan addresses *how* the land would be developed, but it does

7

not address the *use* of the land. According to the Township, Developer should have first sought approval for the use before seeking approval for the land development.

Since the 2012 Ordinance was the ordinance in effect when Developer filed its zoning application, the Township maintains that is the ordinance that governs the zoning application. Although the 2008 Ordinance governs Developer's sketch plan and land development application, the 2012 Ordinance governs Developer's zoning application. The extensions on the sketch plan did not extend the applicability of the 2008 Ordinance to the zoning application. Because Developer stipulated that its zoning plan does not comply with the 2012 Ordinance, the Township urges this Court to reverse, without remand.

We begin by setting forth the principles of statutory construction. The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly. 1 Pa. C.S. §1921(a). The best indicator of the General Assembly's intent is the statute's plain language. *Newtown Square East, L.P. v. Township of Newtown*, 101 A.3d 37, 42 (Pa. 2014). Words and phrases are to be construed according to their common and approved usage. 1 Pa. C.S. §1903(a). When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit. 1 Pa. C.S. §1921(b). However, when the words of the statute are not explicit, the General Assembly's intent may be ascertained by considering, *inter alia*, the object to be attained by the statute and the consequences of a particular interpretation. 1 Pa. C.S. §1921(c). We presume that the General Assembly does not intend a result that is absurd or unreasonable, but does intend for the entire

8

statute to be effective and certain. 1 Pa. C.S. §1922; *Newtown Square*, 101 A.3d at 42. With these principles, we examine the provisions of the MPC.

Section 508(4) of the MPC provides:

(4) *Changes in the ordinance shall affect plats* as follows: (i) From the time an application for approval of a plat, whether preliminary or final, is duly filed as provided in the subdivision and land development ordinance, and *while such application is pending* approval or disapproval, *no change or amendment of the zoning, subdivision or other governing ordinance or plan shall affect the decision on such application adversely to the applicant and the applicant shall be entitled to a decision in accordance with the provisions of the governing ordinances or plans as they stood at the time the application was duly filed*. In addition, when a preliminary application has been duly approved, the applicant shall be entitled to final approval in accordance with the terms of the approved preliminary application as hereinafter provided. However, if an application is properly and finally denied, any subsequent application shall be subject to the intervening change in governing regulations.

53 P.S. §10508(4) (emphasis added). A "plat" is defined in Section 107 of the MPC, as "the map or plan of a subdivision or land development, whether preliminary or final." 53 P.S. §10107; *see Lehigh Asphalt*, 830 A.2d at 1070 n.8. "Land development" is defined, in relevant part, as:

(1) The improvement of one lot or two or more contiguous lots, tracts or parcels of land for any purpose involving:

(i) a group of two or more residential or nonresidential buildings, whether proposed initially or cumulatively, or a single nonresidential building on a lot or lots regardless of the number of occupants or tenure; or

9

> (ii) the division or allocation of land or space, whether initially or cumulatively, between or among two or more existing or prospective occupants by means of, or for the purpose of streets, common areas, leaseholds, condominiums, building groups or other features.

> (2) A subdivision of land.

53 P.S. §10107. There is no question that Developer's age-restricted development constitutes land development and that its sketch plan was a preliminary land development plan.

Section 508(4) of the MPC modified the common law version of the "pending ordinance doctrine," which rendered a landowner's use non-conforming once the ordinance was pending. *Lehigh Asphalt*, 830 A.2d at 1067 n.3. Essentially, the MPC established an exception to the common law rule to protect a landowner/applicant. *Id.*; *see Honey Brook Estates, LLC v. Board of Supervisors of Honey Brook Township*, 132 A.3d 611, 620 (Pa. Cmwlth. 2016). Under Section 508(4), while an application for subdivision or land development is pending, no change in the applicable ordinances shall adversely affect the municipality's decision on those plans. *Lehigh Asphalt*, 830 A.2d at 1067 n.3 (internal citations omitted) (emphasis omitted).

Under Section 508(4), "an applicant has a 'vested right' to develop property in accordance with the zoning in effect at the time [its] application is filed." *Honey Brook Estates*, 132 A.3d at 620. "A landowner 'cannot be denied this right by a change in zoning.'" *Id.* (quoting *Raum v. Board of Supervisors of Tredyffrin Township*, 370 A.2d 777, 797 (Pa. Cmwlth. 1977)).

Where a sketch plan is a mandatory step in a municipality's land development process, the date the applicant submits its sketch plan is the governing date. *Miravich v. Township of Exeter*, 54 A.3d 106, 113 (Pa. Cmwlth.

10

2012).  If, on the other hand, a sketch plan is not mandatory, the date the applicant submits its preliminary plan is the date that governs which ordinance applies.  *Id.*

Clearly, Section 508(4) protects a land development plan from future ordinance changes.  The question is whether this protection extends to later-filed zoning applications.  The Township maintains it does not, asserting such protection is only available through Section 917 of the MPC when an applicant files an application for zoning relief.

In 2000, the General Assembly enacted Section 917 of the MPC, which provides:

> *When an application for either a special exception or a conditional use has been filed with either the zoning hearing board* or governing body, as relevant, *and the subject matter of such application would ultimately constitute either a land development* as defined in section 107 or a subdivision as defined in section 107, no change or amendment of the zoning, subdivision or other governing ordinance or plans shall affect the decision on such application adversely to the applicant, and the *applicant shall be entitled to a decision in accordance with the provisions of the governing ordinances or plans as they stood at the time the application was duly filed.* Provided, further, should such an application be approved by either the zoning hearing board or governing body, as relevant, applicant shall be entitled to proceed with the submission of either land development or subdivision plans within a period of six months or longer as may be approved by either the zoning hearing board or the governing body following the date of such approval in accordance with the provisions of the governing ordinances or plans as they stood at the time the application was duly filed before either the zoning hearing board or governing body, as relevant. If either a land development or subdivision plan is so filed within said period, such plan shall be subject to the provisions of section 508(1) through (4) and specifically to the time limitations of section 508(4) which shall commence as of

11

the date of filing such land development or subdivision plan.

53 P.S. §10917 (emphasis added). In essence, Section 917 permits an applicant, whose plans will culminate in land development or subdivision, to seek zoning relief first and still receive protection from subsequent amendments for any future-filed subdivision or land development plan. *Id.*

In *Lehigh Asphalt*, we examined Section 917's protection. There, a property owner sought mandamus relief from a township's refusal to allow the proposed expansion of the owner's quarry operations, and it appealed from a zoning decision denying its application for a special exception. The owner filed a zoning application for the nonconforming quarry use *and* a land use plan depicting the expansion to the governing board of supervisors, which rejected the plan. A few months later, the township declared the portion of its ordinance allowing quarrying by special exception to be invalid. Two days prior to the enactment of the new ordinance, the owner filed its zoning application for special exception, which was denied. On appeal, we determined the owner's special exception application, approval of which would result in land development, was shielded under Section 917 of the MPC from the effect of the pending amendment and that the board "was obligated to review the application for compliance with the existing provision." *Id*. at 1073.

However, *Lehigh Asphalt* is inapposite because the applicant therein filed applications for both land development and zoning relief at the same time prior to the enactment of the new ordinance. Thus, we did not address whether Section 508(4) would provide similar protection to a later-filed application for zoning relief. *See Lehigh Asphalt.*

12

"[Z]oning plays an important role in determining whether to approve or disapprove a plan." *Graham v. Zoning Hearing Board of Upper Allen Township*, 555 A.2d 79, 82 (Pa. 1989). The question of whether zoning approvals must be obtained as part of the land development approval is governed by the terms of the subdivision and land development ordinance. *Rickert v. Latimore Township*, 960 A.2d 912, 920 (Pa. Cmwlth. 2008). Where zoning approval is required, a township may approve a final plan conditioned upon zoning approval. *Id.*

Indeed, a zoning application "addresses the use of the land, while a subdivision plan addresses how the land is to be developed." *Philomeno*, 966 A.2d at 1110. "While the governing body of a municipality has broad discretion in adopting standards for the approval of subdivision and land development plans, it cannot include provisions relating to the use of land. Regulation of use is a matter appropriate for control through a zoning ordinance." *Id.* (quoting 2 Robert M. Anderson, Law of Zoning in Pennsylvania § 22.20 (1982)).

Although our case law does not directly address the issue before this Court of whether Section 508(4) of the MPC protects only a land development application from newly enacted ordinances or if it extends to a future zoning application, the language in Section 508(4) of the MPC is clear and unambiguous. While a land development application is pending, "no change or amendment of the zoning" shall adversely affect such application. 53 P.S. §10508(4). So long as a land development application is pending, the applicant is entitled to a decision in accordance with the provisions of the governing ordinances or plans as they stood at the time the application was duly filed. This protection naturally extends to

13

decisions regarding zoning relief where such relief is a necessary part of the land development plan.

Insofar as the Township argues that ZHB's interpretation creates an inherent conflict between Sections 508(4) and 917 of the MPC and renders Section 917 mere surplusage, we disagree. Both sections can be reasonably interpreted depending on which application is filed first. If an applicant first files a subdivision or land development plan, Section 508(4) applies; if an applicant first files an application for zoning relief, Section 917 applies. Such an interpretation gives meaning to both sections.

Turning to the case at hand, the filing of a sketch plan is a mandatory step in the Township. Section 260-35 of the Cheltenham Code provides:

> Tentative sketch plans shall be required when the proposed development equals or exceeds eight (8) dwelling units or five (5) acres of land or when the plan includes nonresidential development. In all such cases, the plan processing procedures shall be the same as for the submission of a preliminary plan.

R.R. at 32a. "Any subdivision or land development plan must meet the requirements of Chapter 295, Zoning, unless variances or special exceptions have been granted by the [ZHB]." Section 260-31 of Cheltenham Code.

When Developer submitted and the Township accepted the mandatory sketch plan, the 2008 Ordinance was in effect. The Township provided preliminary analysis advising Developer that a special exception and variances were necessary under the 2008 Ordinance. The sketch plan remained pending by agreement while the parties engaged in negotiations. In these negotiations, the parties considered an alternate, single-family development instead of the age-

14

restricted housing development, which would have obviated the need for the zoning relief ultimately requested.

Although Developer did not seek zoning relief until May 2015, Developer's sketch plan for its land development was *still pending* before the Township. Developer needed zoning relief to proceed with its land development as originally proposed. Section 508(4) of the MPC protects applications from adverse zoning changes. Developer stipulated its application would not meet the zoning criteria under the 2012 Ordinance for special exception. In effect, the changes in the zoning law would have adversely affected Developer's pending land development application.

To conclude that Section 508(4)'s protection only applies to the land development plans and not zoning applications would eviscerate such protection by enabling municipalities to change zoning ordinances upon receipt of any undesired land development plans to thwart approval. It would also require applicants to request zoning relief first before seeking subdivision or land development approval, as opposed to providing applicants a choice regarding how to proceed. In some cases, requesting zoning relief would be an unnecessary step where a governing body does not approve the land development plan. For these reasons, we conclude that the ZHB properly determined that the 2008 Ordinance governed.

**B. Setback Requirements - Land in Adjoining Municipality**

Next, the Township contends that, under the 2008 Ordinance, Developer is required to provide 50 feet for the building setback and 50 feet for the parking setback. Developer's plan provides 38 feet for the building setback and 0

15

feet for the parking setback within the municipal boundaries of Cheltenham Township. R.R. at 19a. To satisfy the setbacks, Developer relies on land in Springfield Township.

Relying on *Hamilton Hills Group, LLC v. Hamilton Township Zoning Hearing Board*, 4 A.3d 788 (Pa. Cmwlth. 2010), the Township argues a zoning hearing board has no legal authority to find that land lying outside the boundaries of its municipality may satisfy the dimensional requirements of that municipality's ordinance. Both the MPC and *Hamilton Hills* limit the legal authority of a zoning hearing board to its own municipal borders. Thus, the Township maintains that the Developer's zoning plan does not comply with the building and parking setbacks within Cheltenham Township.

The 2012 Ordinance provides that the "[t]he minimum building or parking setback from an exterior or perimeter street right-of-way, or *a municipal boundary*, shall be 100 feet." Section 295-243 of the 2012 Ordinance (emphasis added); R.R. at 37a. By contrast, the 2008 Ordinance does not require a setback from a municipal boundary line. Rather, the 2008 Ordinance refers to the distance the building shall be set back from the "property line," not the zoning boundary line. S.R.R. at 53b-55b. Absent an ordinance provision or definition to the contrary, a municipal boundary line does not constitute a property line for purposes of setbacks.

Notwithstanding, the Township contends the municipal boundary is the property line for the setback provisions and relies on *Hamilton Hills* for support. In *Hamilton Hills*, this Court considered the issue of whether, in the absence of explicit language in a zoning ordinance directly stating that all requirements for a special exception must be satisfied by land within the borders of

16

the enacting municipality, may a zoning hearing board refuse to consider land located outside its jurisdiction in determining whether a plan satisfies the municipality's zoning requirements. There, the developer needed a certain amount of open space for a townhouse development project that was located in three separate municipalities. The developer sought to satisfy Hamilton Township's open-space requirement by including open space in one of the two other municipalities such that Hamilton Township would be exerting control over the use of property located in another township.

On appeal, this Court found that such an exercise of control is improper because a municipality cannot act and regulate land that is outside of its borders. *Hamilton Hills*, 4 A.3d at 795. "While the MPC does not state that municipalities are precluded from considering extraterritorial matters when making zoning decisions, numerous sections of the MPC indicate that there is an underlying assumption that zoning decisions can be made based on factors within the municipality's jurisdiction." *Id*. Moreover, municipal authority to regulate land use and development is further limited to protect the "public health, safety, morals or general welfare" of the community. *Id*. at 796. Finally, we explained that the central goals of the ordinance were to prevent the overcrowding of land, preserve the rural nature of the community, and avoid excessive development *within the* Township. *Id*. Such goals can "only be accomplished if the density and open space requirements used to balance higher density developments are satisfied by land *within the borders of the Township*." *Id*. at 794 (emphasis added).

*Hamilton Hills* is clearly distinguishable because it pertained to open space within a municipality, not setback provisions. The ZHB simply found that the municipal boundary line was not a property line for measuring setbacks. R.R.

17

at 229a.  In so concluding, the ZHB did not exert any control over land located in another municipality.  Thus, we conclude the ZHB did not err in this regard.

### C. Advisory Opinion

Lastly, the Township contends that ZHB lacks authority to provide advisory opinions.  Developer requested an interpretation of the ordinance.  ZHB improperly made certain "determinations" and "interpretations," notwithstanding the fact that such were not directly related to a request for a variance or a special exception.  Such "determinations" or "interpretations" are not permitted to be made by a zoning hearing board in a purely advisory manner.

A zoning hearing board lacks jurisdiction to issue an advisory opinion.  *Darrah, Inc. v. Zoning Hearing Board of Spring Garden Township*, 928 A.2d 443, 444 (Pa. Cmwlth. 2007).  Pursuant to Section 909.1(a) of the MPC,[5] zoning hearing boards are charged to render final adjudications on:  (1) challenges to the validity of a zoning ordinance, and (2) appeals of the grant or denial of a permit, a variance or a special exception.  *Id*. at 447.  A zoning hearing board lacks jurisdiction to interpret an ordinance in the absence of a request for specific relief. *Id*.  In *Darrah*, the applicant asked for an interpretation, without filing an application for some kind of zoning permit or license and without challenging the validity of the ordinance.  *Id*.

Here, Developer did not request an interpretation of the ordinance in the abstract.  Rather, Developer requested specific relief in the form of a special exception and variance.  S.R.R. at 5b.  Developer asked for an interpretation directly in connection with its variance request.  *See* S.R.R. 5b, 10b-11b.

_____

[5] Added by the Act of December 21, 1988, P.L. 1329, *as amended,* 53 P.S. §10909.1.

Developer's request for interpretation was in response to the zoning officer and Commission's determinations that variances were necessary. Unlike in *Darrah*, Developer did not seek a purely advisory opinion. Thus, we conclude that the ZHB did not provide an advisory opinion, but rather directly addressed whether variances were required under the ordinance as part of Developer's variance request.

Accordingly, we affirm.

_____
MICHAEL H. WOJCIK, Judge

Judge Cosgrove did not participate in the decision of this case.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Board of Commissioners  :
of Cheltenham Township,  :
         :
     Appellant :
         :
   v.     : No. 1317 C.D. 2016
        : Argued: May 1, 2017
Hansen-Lloyd, L.P.   :

O R D E R

AND NOW, this 6th day of July, 2017, the order of the Court of Common Pleas of Montgomery County, dated July 7, 2016, is AFFIRMED.

_____
MICHAEL H. WOJCIK, Judge