[J-89-2018] [MO: Baer, J.]
**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

| | |
|---|---|
| IN RE: APPEAL OF THE BOARD OF COMMISSIONERS OF CHELTENHAM TOWNSHIP FROM THE DECISION DATED DECEMBER 16, 2015, OF THE ZONING HEARING BOARD OF CHELTENHAM TOWNSHIP | : No. 3 MAP 2018 :  : Appeal from the Order of the : Commonwealth Court at No. 1317 CD : 2016 dated July 6, 2017 Affirming the : Order of the Court of Common Pleas : of Montgomery County, Civil Division, : at No. 2016-00752, dated July 7, 2016 |
| APPEAL OF: BOARD OF COMMISSIONERS OF CHELTENHAM TOWNSHIP | : and exited July 11, 2016. :  : ARGUED: December 4, 2018 |

**DISSENTING OPINION**

**JUSTICE WECHT**                                                        **DECIDED: July 17, 2019**

"Every statute shall be construed, if possible, to give effect to all its provisions." 1 Pa.C.S. § 1921(a). I cannot join the Majority, because in considering the two statutes at issue in this case, it disregards a material textual asymmetry between the statutes that speaks directly to the question upon which we granted review and, in my view, compels a contrary result.[1]

At issue in this case is the interplay between the statutory process that applies to subdivision plan (or "plat") applications submitted to a governing body and the discrete

---

[1] We granted allowance of appeal to consider: "Did the Commonwealth Court overlook the express language of 53 P.S. [§] 10917 by holding that a zoning application for special exception is governed by an ordinance other than the ordinance in effect when the zoning application was filed?" *In re: Appeal of the Bd. of Comm'rs of Cheltenham Twp.*, 179 A.3d 1079, 1079 (Pa. 2018) (*per curiam*).

statutory process that applies to an application to a zoning board for a special exception. Plat approval, a prerogative that has been conferred by the General Assembly upon the governing body or planning agency of the jurisdiction in question, is controlled by Article V of The Pennsylvania Municipalities Planning Code, 53 P.S. §§ 10101, *et seq.* ("MPC").[2] Article V governs "Subdivision and Land Development." Zoning approvals, which are subject to approval by a separate body, here a zoning hearing board, are considered pursuant to MPC Article IX, which concerns "Zoning Hearing Board and Other Administrative Proceedings."

Article V, Section 10508 ("Approval of plats"[3]), which took effect in its present form on August 22, 2000, provides, in relevant part, as follows:

(4) Changes in the ordinance shall affect plats as follows:

(i) From the time *an application for approval of a plat*, whether preliminary or final, is duly filed as provided in the subdivision and land development ordinance, and while *such application* is pending approval or disapproval, no change or amendment of the zoning, subdivision or other governing ordinance or plan shall affect the decision on *such application* adversely to the applicant and the applicant shall be entitled to a decision in accordance with the provisions of the governing ordinances or plans as they stood at the time *the application* was duly filed. . . .

53 P.S. § 10508 (emphasis added). Thus, by its terms, Section 508 ensures that the plat application, itself, will be considered strictly under the ordinances that applied at the time of its filing.

---

[2]   The Majority provides a fuller account of the MPC relative to this case. *See* Maj. Op. at 2-6.

[3]   Like the Majority, for simplicity's sake I refer to the tentative sketch plan underlying the instant matter as the "plat" or "plan," and the associated application as a "plat application."

The Majority correctly notes that, under Cheltenham Township's ordinance, the preliminary sketch plan submitted by Hansen-Lloyd, L.P. ("Developer") counted as a preliminary plat application, *see* Maj. Op. at 7 & n.4, and that, by virtue of the continued extensions agreed to by the parties with regard to the plan, that application remained subject to the relevant ordinances as they existed when that application was filed, as assured by Section 508. But just as clearly, the statute is silent about whether the law that applied at the time the preliminary application is filed applies also to any other incidental legal approvals necessary to complete the development, including special exceptions under the zoning ordinance sought before the zoning hearing board. Here, the governing body informed Developer in its letter acknowledging receipt of its plat application that Developer's plan would not be granted unless and until the zoning hearing board approved two special exceptions. *See* Maj. Op. at 7.

Applications for special exceptions are controlled in relevant part by 53 P.S. § 10917. Like Section 508, Section 917 expressly provides that the board will review a zoning application according to the zoning law as it applied at the time that the application was filed. Unlike Section 508, Section 917—which took effect in its present form on February 20, 2001, and which explicitly cross-references Section 508—expressly provides a safe harbor for plat applications associated with the project for which the special exception is sought.

> When an application for either a special exception or a conditional use has been filed with either the zoning hearing board or governing body, as relevant, *and the subject matter of such application would ultimately constitute . . . a subdivision as defined in [53 P.S. § 10107]*, no change or amendment of the zoning, subdivision or other governing ordinance or plans shall affect the decision on *such application* adversely to the applicant, and the applicant shall be entitled to a decision in accordance with the provisions of the governing ordinances or plans as they stood at the time *the*

*application* was duly filed. *Provided, further, should* such an application *be approved by either the zoning hearing board or governing body, as relevant, applicant shall be entitled to proceed with the submission of . . . subdivision plans within a period of six months or longer as may be approved by either the zoning hearing board or the governing body following the date of such approval in accordance with the provisions of the governing ordinances or plans as they stood at the time the application was duly filed before either the zoning hearing board or governing body, as relevant.* If either a land development or subdivision plan is so filed within said period, such plan shall be subject to the provisions of section 508(1) through (4) and specifically to the time limitations of section 508(4) which shall commence as of the date of filing such . . . subdivision plan.

53 P.S. § 10917 (emphasis added, footnote omitted). Thus, unlike Section 508, Section 917 specifically anticipates and provides for a circumstance in which a developer requires both plat and zoning approvals to proceed with a development, fixing the law as to the latter for a period of six months after the special exceptions are granted.

"The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly." 1 Pa.C.S. § 1921(a). "When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." *Id.* § 1921(b). In ascertaining legislative intent, we may presume "[t]hat the General Assembly intends the entire statute to be effective and certain." *Id.* § 1922(2). Finally, statutes that "relate to the same persons or things or to the same class of persons or things" are "in *pari materia*," and, as such, "shall be construed together, if possible, as one statute." *Id.* § 1932.

The Majority reasons that the two provisions are mirror images of each other, with either of the two sections ensuring that the ordinance at the time of the first-filed application governs all associated approval processes for the entire development, based upon whether the developer files its plat or its zoning application first. It begins by quoting what it takes to be the relevant language of each statute, *i.e.*, the parallel language in both sections providing that the law that applied at the time of the application relevant to

the statute in question continues to apply to *that* application until it is approved or rejected. Focusing thus upon the extent to which the statutes echo each other, the Majority finds that "[t]he above language of Subsection 508(4)(i) and Section 917 clearly provides the same type of protection for a proposed development project." Maj. Op. at 17. In so finding, the Majority makes no mention of the fact that Section 917, and Section 917 *only*, explicitly provides a safe harbor to ensure that its counterpart plat application enjoys the protection of the same law as applied when the zoning application was filed.

The Majority further notes that neither Section "requires submission of one application before the other," such that "Developer was free to begin the development process with the filing of either a [plat] application under Section 508 of the MPC, or a zoning application under Section 917 of the MPC." *Id.* at 18. The Majority then observes that the zoning change that was implemented in 2012, during the protracted pendency of Developer's plat application,[4] "was adverse to Developer's 2008 Sketch Plan, as the parties stipulated that Developer's zoning requests do not meet the criteria under the 2012 zoning ordinance for a special exception, two of which are needed for the proposed development." *Id.* at 18. Thus, the Majority correctly concludes, the zoning changes do not apply to the plat application, which was filed when the 2008 Ordinance still applied and was entitled under Section 508 to be decided under that Ordinance.

Next, the Majority turns to the zoning application, noting that the applicable local Subdivision Code "require[s] that Developer's 2008 Sketch Plan comply with the [Cheltenham] Zoning Code unless the ZHB has granted special exceptions." *Id.* at 18-19. Without significant additional reasoning, the Majority concludes that, "where '[such] relief is a necessary part of the land development plan,' we agree with the Commonwealth

---

[4]    The Majority provides a more detailed account of the zoning ordinances and amendments thereto at issue. *See* Maj. Op. at 4-6.

Court that Section 508(4)(i)'s protection of pending [plat applications] extends to the decisions on the requested zoning relief needed for purposes of land development plan approval." *Id.* at 19 (quoting *Bd. of Comm'rs of Cheltenham, Twp. v. Hansen-Lloyd, L.P.*, 166 A.3d 496, 505 (Pa. Cmwlth. 2017)). The Majority adds that "to hold otherwise would enable a municipality to disapprove a [plat application] based on a zoning change adverse to the [application] in contravention of the protection offered by Section 508(4)(i)." *Id.*

As noted, the Majority makes much of the fact that the legislature did not specify that one category of application *must* be submitted before the other.[5] That clearly is the case. But that observation alone offers no support to any particular resolution of the interpretive question before us. Nothing prevents the General Assembly from attaching advantages or disadvantages to developers depending upon whether they submit multiple applications necessary to proceed with a development in one order or another. Indeed, it may do so explicitly or by implication, for reasons that might seem sound or unsound. If the relevant provisions of the MPC read together as a whole, in their full context, and according to their plain language leads inexorably to such a result, and if no constitutional requirement is violated in the effort, we may not second-guess the legislature's choice. *See Williams v. GEICO Gov't Emps. Ins. Co.*, 32 A.3d 1195, 1204 (Pa. 2011) ("[I]t is not the proper function of this Court to weigh competing public policy interests; rather that task is best suited for the legislature.").[6]

---

[5] *See* Maj. Op. at 18 ("[N]either Subsection 508(4)(i) nor Section 917 requires submission of one application before the other, and the parties do not cite, nor have we uncovered, any provision of the MPC, Subdivision Code, or Zoning Code that imposes such a requirement.").

[6] Furthermore, the Majority cites nothing more than Developer's own stated preference for the approach that it chose as evidence that an asymmetrical account, by creating an incentive for developers to begin the approval process by filing any necessary zoning applications, might reflect "bad" policy. As esoteric as land use and zoning regulations can be, I would not assume symmetry of application, with all discretion and

The Majority's approach depends upon its inference that a plat application necessarily subsumes, and shares its protections with, any other application that must precede its approval, even when the incidental approval in question must be sought before a discrete administrative body, pursuant to a separate statutory procedure, according to criteria with no *direct* bearing on the plat application to which Section 508 exclusively refers. In this case, the Majority posits, because the governing body could not approve the plat application without the ZHB's approval of special exceptions, the zoning application became nothing more than an element of the plat application, subject without qualification to the protections that Section 508 confers by its plain language only upon the plat application.

The Majority's inference in this regard, combined with its apparent acceptance of Developer's reliance upon under-defined "vesting rights,"[7] necessitates the symmetry of the application-specific protections conferred by both sections, which the Majority embraces. *See* Maj. Op. at 19 n.11 (holding that "[o]ur interpretation of Section 508(4)(i) permits the developer to seek land development approval first and receive that same protection for future-filed zoning applications" as the protection provided in the reverse

---

attendant protections afforded to the whim of developers, would be in the public interest. *Cf.* 1 Pa.C.S. § 1922(5) (allowing courts to presume that "the General Assembly intends to favor the public interest against any private interest"). In any event, such a policy-laden evaluation is not within the Court's purview.

[7] The Majority does not employ this terminology, as such, but its analysis is inseparable from the concept, which it recites in its account of the trial court's opinion, with which the Majority finds no fault. *See* Maj. Op. at 10 ("The trial court posited that the law clearly permitted a developer to obtain 'vesting rights' by filing either a land development application or a zoning application, and that because Developer chose to file its 2008 Sketch Plan first, it obtained vesting rights, *inter alia*, in the 2008 Zoning Ordinance."). But what rights are "vested," if any, is essentially the very question as to which we granted review. To posit this as a premise rather than to arrive at it as a logical conclusion begs the question and muddies the inquiry.

scenario by Section 917). Thus, what is true of plat applications filed under Section 508, the Majority reasons, also must be true of zoning applications filed under Section 917.

If the Majority is correct that a plat application subsumes and protects all related applications that the development in question requires, and if it is correct that filing either application creates "vesting rights" that freeze the applicable land use and zoning law indefinitely as to all approvals that the development requires, then, *a fortiori*, a zoning application, when it is the first item filed, subsumes all related approvals, including plat applications associated with the development for which zoning approval is sought. Thus, those who file for zoning approvals first also would enjoy indefinite protections against changes in the law that might bear upon the plat application that the zoning approval ultimately will require, no matter how much time separates the zoning application's submission and the submission of the related plat application. In this way, the Majority simultaneously writes a version of Section 917's safe harbor *into* Section 508 without any time limitation, while simultaneously writing the express time limitation *out* of Section 917's safe harbor, which, as noted above, limits its safe harbor for a plat application to the six months following approval of the special exception.

I find it bewildering that the Majority finds no material import in this substantial difference between the statutes on the very scenario presented in this case, which we must account for interpretively on the assumption that the legislature intended the differentiation to have some effect. *See Commonwealth v. Giulian*, 141 A.3d 1262, 1268 (Pa. 2016) ("[A]lthough one is admonished to listen attentively to what a statute says[,] one must also listen attentively to what a statute does not say."). In this regard, I find it striking that Section 917 took effect in its present form six months *after* Section 508 took effect in its present form, and that it cross-references Section 508. If the Majority's account of the General Assembly's intent with regard to Section 508 is correct, then it is

unclear why the legislature would have thought it necessary to spell out in Section 917 the legal protections that the legislature intended to imply in Section 508—indeed, it does so specifically with respect to applicable time limits. Moreover, if the General Assembly intended that Section 508's protections should apply indefinitely to every zoning approval the plan required, it would not have imposed a time limit upon Section 917's express safe harbor for precisely the situation in which plat and zoning approvals both are required for a development to proceed.

In effect, the Majority adds an absent term to Section 508 that the General Assembly clearly knew how to spell out, as shown by the fact that the lawmakers soon thereafter did so in Section 917. We must not add terms to statutes that the legislature chose to omit. *See Mohamed v. Commonwealth, Dep't of Transp., Bureau of Motor Vehicles*, 40 A.3d 1186, 1194-95 (Pa. 2012) ("[W]here the language of a statute is clear and unambiguous, a court may not add matters the legislature saw fit not to include under the guise of construction. . . . Any legislative oversight is for the General Assembly to fill, not the courts."). Second, if Section 917's protections are to run indefinitely, as the Majority holds Section 508's implicit protections do, then the statute's six-month time limit is a dead letter. This, too, violates a time-honored interpretive rule. *See Bd. of Revision of Taxes, City of Phila. v. City of Phila.*, 4 A.3d 610, 622 (Pa. 2010) (holding that we may not "ignore the language of a statute, nor may we deem any language to be superfluous"). Conversely, reading Sections 508 and 917 in *pari materia*, such that each of their provisions has discrete effect, requires us to recognize that the inclusion of a time-limited safe harbor in Section 917 renders the lack of such a provision in Section 508 conspicuous, and material, by its absence. *See Fonner v. Shandon, Inc.*, 724 A.2d 903, 907 (Pa. 1999) ("[W]here the legislature includes specific language in one section of the statute and excludes it from another, the language should not be implied where

excluded."). In particular, in the lone instance in which the legislature saw fit to speak to time limits, it signaled clearly that it did not think it wise to grant developers protections that stretched indefinitely into the future.

We granted review to consider whether "the Commonwealth Court overlook[ed] the express language of 53 P.S. [§] 10917 by holding that a zoning application for special exception is governed by an ordinance other than the ordinance in effect when the zoning application was filed." *In re Appeal of the Bd. of Comm'rs of Cheltenham Twp.*, 179 A.3d at 1079 (*per curiam*). The Commonwealth Court did precisely that. The Majority embraces its reasoning nonetheless.

Perhaps it would be more equitable for the General Assembly to freeze the law upon the filing of any application associated with a development with respect to any other step necessary to secure approval for that development, regardless of which approval the developer chooses to seek first. But it is not for this Court to opine upon the General Assembly's wisdom, nor to correct perceived deficiencies in that regard. The statutes are clear. Section 508's safe harbor does not under any circumstances extend beyond the plat applications to which it exclusively refers or supplant Section 917's similar but critically distinct safe harbor. Thus, I respectfully dissent.

Justice Todd joins this dissenting opinion.