Ridgeview Associates, Appellant, *v.* The Board of Supervisors of Lower Paxton Township and Pleasant Hills Community Club, Appellees.

460

Argued January 8, 1975, Before President Judge BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT.

*Walter W. Wilt,* with him *Hepford, Zimmerman & Swartz,* for appellant.

*Patrick T. Sullivan,* with him *Naugle & Sullivan,* and *Wix & Wenger* for appellee.

OPINION BY JUDGE MENCER, February 28, 1975:

This is an appeal from an order of the Court of Common Pleas of Dauphin County affirming the decisions of the Board of Supervisors of Lower Paxton Township

which revoked its prior approval of a preliminary development plan submitted by Ridgeview Associates (appellant) and which rejected first and second final development plans submitted by appellant.[1]

It is well settled that where, as here, the lower court does not take additional testimony, the scope of our review is limited to a determination of whether or not the board of supervisors committed an abuse of discretion or an error of law. *Doran Investments v. Muhlenberg Township Board of Commissioners*, 10 Pa. Commonwealth Ct. 143, 309 A. 2d 450 (1973).

Because the facts before this Court are complex, we feel impelled to set them forth at some length, in order to provide the necessary background understanding. In 1958, the Township passed its first zoning ordinance. At that time, the land which is the subject of this appeal was located in a district zoned R-2. In an R-2 district multifamily and apartment dwelling units were a permitted use. Since 1958, the Township has been actively rezoning its land to keep pace with changing conditions. This rezoning culminated in a new comprehensive plan in 1972. At all times the subject tract remained in an R-2 district.

After the new comprehensive plan was passed in 1972, appellant purchased its tract with the intent of constructing moderate-income multifamily dwelling units. On May 17, 1973, appellant submitted a preliminary development plan to the Township. On May 30, 1973, this preliminary plan was unanimously approved, subject to certain correctable conditions, by the Planning and Zoning Commission (Commission). On June 18, 1973, the Township Board of Supervisors unanimously approved the preliminary plan without mentioning the conditions suggested by the Commission.[2] On July 16, 1973, the meeting of the

---

1. The Board of Supervisors filed a motion to quash this appeal which we find to be without merit.

2. The Commission exercises only an advisory function for the Supervisors.

Supervisors was attended by 300 citizens protesting the preliminary approval of appellant's middle-income project. These citizens were heard on July 23, 1973; however, there were no minutes kept of that meeting.

On August 16, 1973, appellant submitted the proposed final plan to the Township. One day later the Commission undertook procedures to rezone appellant's land as an R-1 district, a district which prohibited multifamily dwellings. On August 29, 1973, appellant's final plan was rejected by the Commission. On the same day the Commission also rejected the planned rezoning. At that time appellant's final plan was put on the Supervisors' calendar for their forthcoming meeting. Prior to this meeting, appellant prepared and submitted a revised final plan for review by the Commission. On September 19, 1973, the Supervisors undertook the initial procedures to review the Commission's rejection of the rezoning of appellant's tract to an R-1 district.

On September 24, 1973, the Supervisors, without the knowledge of the Commission or appellant, "withdrew" their June 18, 1973 approval of appellant's preliminary plan and then rejected appellant's first final plan. Two days later the Commission, which was still without knowledge of the Supervisors' acts of September 24, 1973, unanimously approved appellant's revised final plan. A week later the tract was rezoned as an R-1 district. On October 15, 1973, the Supervisors tabled their review of the Commission's approval of the revised final plan. Finally, on November 5, 1973, the Supervisors rejected appellant's revised final plan. Appellant appealed to the Court of Common Pleas of Dauphin County on November 26, 1973. After permitting the intervention of appellee, Pleasant Hills Community Club, that court affirmed the actions of the Supervisors in revoking the preliminary plan and dismissed the appeal. This appeal followed and we reverse and remand.

Appellant brings to this Court three interdependent issues:

1. May the Township Board of Supervisors revoke its approval of appellant's preliminary development plan?

2. Did the rezoning of the tract prevent appellant from developing what is now a nonpermitted use?

3. Did the Supervisors abuse their discretion and commit an error of law in denying approval of appellant's revised final development plan?

The Supervisors had no authority to revoke their approval of appellant's preliminary development plan. Section 508 of the Pennsylvania Municipalities Planning Code, Act of July 31, 1968, P. L. 805, *as amended,* 53 P.S. §10508, provides:

"All applications for approval of a plat (other than those governed by Article VII) [53 P.S. §10701 et seq.], whether preliminary or final, shall be acted upon by the governing body or the planning agency within such time limits as may be fixed in the subdivision and land development ordinance but the governing body or the planning agency shall render its decision and communicate it to the applicant not later than ninety days after such application is filed.

(1) The decision of the governing body or the planning agency shall be in writing and shall be communicated to the applicant personally or mailed to him at his last known address not later than five days following the decision;

(2) When the application is not approved in terms as filed the decision shall specify the defects found in the application and describe the requirements which have not been met and shall, in each case, cite to the provisions of the statute or ordinance relied upon;

(3) Failure of the governing body or agency to render a decision and communicate it to the applicant within the time and in the manner required herein shall

be deemed an approval of the application in terms as presented unless the applicant has agreed in writing to an extension of time or change in the prescribed manner of presentation of communication of the decision, in which case, failure to meet the extended time or change in manner of presentation of communication shall have like effect;

(4) From the time an application for approval of a plat, whether preliminary or final, is duly filed as provided in the subdivision and land development ordinance, and while such application is pending approval or disapproval, no change or amendment of the zoning, subdivision or other governing ordinance or plan shall affect the decision on such application adversely to the applicant and the applicant shall be entitled to a decision in accordance with the provisions of the governing ordinances or plans as they stood at the time the application was duly filed. In addition, when a preliminary application has been duly approved, the applicant shall be entitled to final approval in accordance with the terms of the approved preliminary application as hereinafter provided. However, if an application is properly and finally denied, any subsequent application shall be subject to the intervening change in governing regulations. When an application for approval of a plat, whether preliminary or final, has been approved or approved subject to conditions acceptable to the applicant, no subsequent change or amendment in the zoning, subdivision or other governing ordinance or plan shall be applied to affect adversely the right of the applicant to commence and to complete any aspect of the approved development in accordance with the terms of such approval within three years from such approval. Where final approval is preceded by preliminary approval, the three-year period shall be counted from the date of the preliminary approval. In the case of any doubt as to the terms of a pre-

liminary approval, the terms shall be construed in the light of the provisions of the governing ordinances or plans as they stood at the time when the application for such approval was duly filed.

(5) Before acting on any subdivision plat, the governing body or the planning agency, as the case may be, may hold a public hearing thereon after public notice."

Nowhere in this section or anywhere else in the Municipalities Planning Code is there any authority, express or implied, for the governing body of a municipality to revoke its former approval of a preliminary development plan. To the contrary, Section 508(4) provides that, when a preliminary application has been duly approved, the applicant shall be entitled to final approval in accordance with the terms of the approved preliminary application. This provision makes it clear that the legislature intended that a landowner could rely on the application of existing zoning to his plat, once his plan received preliminary approval. Appellees' contention that the power to give necessarily carries with it a corresponding power to take back is without merit. A municipality is given the statutory right, *prior to approving* a development plan, to have the plan reviewed by its engineers and planning commission to determine whether any errors have been made. This statutory process of review, resubmission, and review insures to the municipality more than ample opportunity to meet errors and omissions. The granting to a municipality of the authority sought here would indeed be a dubious prerogative.

We are not here concerned with the power of a governing body to require conformance to its ordinances when it has been misled by a submitting developer or where a glaring irregularity is later found in the plan. The record indicates no fraud perpetrated by the developer or any intentionally misleading statements or glaring irregularities in the developer's preliminary plan.

What the record does indicate is an attempt by harried municipal officials to concede to the clamoring of constituents who are reluctant to accept the legislative processes in zoning cases when the results are deemed unsatisfactory. Almost four months after their original approval of the preliminary plan, the Supervisors have attempted to seize upon a few technical errors, which they had ignored when first granting preliminary approval, in order to revoke their approval of the preliminary plan. This they cannot do without violating the provisions of the Municipalities Planning Code.

The rezoning of appellant's tract does not prevent the use of it in a manner consistent with former zoning. There can be no question that the provisions of Section 508 of the Municipalities Planning Code protect the appellant from what the Board of Supervisors attempted to do in this case. A governing body, once it has received a preliminary development plan, cannot suddenly rezone the land in question in an attempt to deter the applicant from developing his property in accordance with existing zoning. *Monumental Properties, Inc. v. Board of Commissioners of the Township of Whitehall*, 11 Pa. Commonwealth Ct. 105, 311 A. 2d 725 (1973). This is especially true in a case, such as here, where both the Commission and the Board of Supervisors approved the preliminary plan before the rezoning. The improper revocation of approval of the preliminary plan could not change this clear principle of law.

The Supervisors did commit an abuse of discretion and an error of law in rejecting appellant's revised final plan. In their brief they set forth two reasons for the rejection of the revised final plan: (1) The plan was not based upon a then-existing preliminary plan, and (2) the plan proposed a use that was expressly prohibited by the zoning ordinance then in effect. In light of our previous discussions, neither of these reasons merits further comment.

For the above reasons, we reverse and make the following

ORDER

AND NOW, this 28th day of February, 1975, the order of the Court of Common Pleas of Dauphin County is reversed, the motion of the Board of Supervisors of Lower Paxton Township to quash is dismissed, and the record is remanded to the Court of Common Pleas of Dauphin County, with direction to the said Board of Supervisors to provide opportunity to Ridgeview Associates to submit a further final plan which shall be approved or disapproved for reasons not inconsistent with this opinion.