734 A.2d 854

**MEADOWS OF HANOVER DEVELOPMENT, INC., Appellant,**

v.

**BOARD OF SUPERVISORS OF SOUTH HANOVER TOWNSHIP, Appellee.**

Supreme Court of Pennsylvania.

Argued April 26, 1999.

Decided July 22, 1999.

Reargument Denied Nov. 3, 1999.

Charles E. Zaleski, Harrisburg, for Meadows of Hanover Development, Inc., appellant.

Charles W. Rubendall, II, Donald M. Lewis, Harrisburg, John S. Davidson, Hershey, for Hanover Township, appellee.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN and SAYLOR, JJ.

## OPINION

NEWMAN, Justice.

Meadows of Hanover Development, Inc. (Appellant) appeals from an Order of the Commonwealth Court that reversed an Order of the Court of Common Pleas of Dauphin County (trial court) that reversed a decision of the Board of Supervisors of South Hanover Township (Board) denying preliminary approval of Appellant's subdivision development plan. We reverse.

## FACTUAL AND PROCEDURAL HISTORY

In 1994, Appellant acquired an unimproved 221–acre tract of land in South Hanover Township, Dauphin County intending to build homes and commercial buildings on the property. On July 15, 1994, Appellant submitted a Preliminary Subdivision Plan for the approval of the Board. The Board denied approval for reasons concerning zoning, and Appellant then submitted a second Preliminary Subdivision Plan (Compromise Plan),[1] proposing to develop the property in fifteen phases over a thirteen-year period. The Board also rejected the Compromise Plan, giving the following twelve reasons for doing so:

(1) The proposed phasing schedule and phasing plan submitted by Appellant failed to satisfy Sections 508(4)(v) and

---

1. The Board argues that the second plan was not substantially different from the first plan, and therefore takes issue with the term "Compromise Plan." However, in the interest of consistency, we use the term "Compromise Plan" because both the trial court and the Commonwealth Court used this term to identify the plan at issue.

(vi) of the Pennsylvania Municipalities Planning Code (Code), 53 P.S. §§ 10508(4)(v) and (vi).

(2) The Compromise Plan failed to set forth the perimeter monuments as required by Section 42.1.d of the South Hanover Township Subdivision and Land Development Ordinance (Ordinance).

(3) Appellant violated Section 81.3.a of the Ordinance which requires all residential subdivisions to provide for recreation sites which "should be easily and safely accessible from all areas of the development to be served."

(4) Appellant failed to submit a completed sewage "Plan Revision Module for Land Development" or equivalent information sufficient to comply with the sewage requirements of the Pennsylvania Sewage Facilities Act.

(5) There was not sufficient capacity reserved in the Derry Township Municipal Authority treatment plant to treat the proposed flow from the project.

(6) A state highway occupancy permit is required by the State Highway Law before access to a state highway is permitted.

(7) The Compromise Plan failed to depict Robin Lane, proposed as a "private access drive", as a street to be dedicated to the Township and failed to provide appropriate design criteria for Robin Lane as set forth in Section 31 of the Ordinance.

(8) Even if Robin Lane is a driveway or access road, the Supervisors, pursuant to Section 41.d.3 of the Ordinance, can mandate compliance with the design standards of Section 31 of the Ordinance.

(9) The Compromise Plan was defective for failing to improve a Township road, pursuant to the requirements of Section 34.1 of the Ordinance.

(10) Section 25.2.d. of the Ordinance requires that Appellant file a preliminary erosion and sedimentation plan with a preliminary plat, and the data submitted by Appellant with respect to that requirement was not sufficient.

(11) The Compromise Plan did not provide for any means of access to the multi-family residential dwellings other than from a private drive; there was no access from a public street so the plan did not adequately provide for the efficient movement of traffic.

(12) The Compromise Plan did not comply with the provisions of Ordinance No. 4–1994 (now No. 2–1995), which was pending when the land development plan was submitted.

Appellant appealed the decision of the Board to the trial court, which reversed, finding that none of the twelve reasons for denying approval was a legally sufficient basis upon which to reject the Compromise Plan. The Board then appealed to the Commonwealth Court. In a Memorandum Opinion, without dissent, the Commonwealth Court upheld the trial court's decision with respect to eleven of the twelve reasons for denying approval, determining that the "only substantial issue" was Appellant's failure to comply with Sections 508(4)(v) and (vi) of the Code. The Commonwealth Court held that the Compromise Plan did not meet the requirements of Sections 508(4)(v) and (vi), and that the Board could deny approval for that reason. Accordingly, the court reversed the Order of the trial court.

## DISCUSSION

■ In this case of first impression, Appellant argues that its failure to comply with the directives of Sections 508(4)(v) and (vi) cannot provide a basis for the Board's denying preliminary approval of its development plan. We agree.

Section 508(4) of the Code provides as follows:

Changes in the ordinance shall affect plats as follows:

(i) From the time an application for approval of a plat, whether preliminary or final, is duly filed as provided in the subdivision and land development ordinance, and while such application is pending approval or disapproval, no change or amendment of the zoning, subdivision or other governing ordinance or plan shall affect the decision on such application adversely to the applicant and the applicant shall be

entitled to a decision in accordance with the provisions of the governing ordinances or plans as they stood at the time the application was duly filed. In addition, when a preliminary application has been duly approved, the applicant shall be entitled to final approval in accordance with the terms of the approved preliminary application as hereinafter provided. However, if an application is properly and finally denied, any subsequent application shall be subject to the intervening change in governing regulations.

(ii) When an application for approval of a plat, whether preliminary or final, has been approved without conditions or approved by the applicant's acceptance of conditions, no subsequent change or amendment in the zoning, subdivision or other governing ordinance or plan shall be applied to affect adversely the right of the applicant to commence and to complete any aspect of the approved development in accordance with the terms of such approval within five years from such approval.

(iii) Where final approval is preceded by preliminary approval, the aforesaid five-year period shall be counted from the date of the preliminary approval. In the case of any doubt as to the terms of a preliminary approval, the terms shall be construed in the light of the provisions of the governing ordinances or plans as they stood at the time when the application for such approval was duly filed.

(iv) Where the landowner has substantially completed the required improvements as depicted upon the final plat within the aforesaid five-year limit, or any extension thereof as may be granted by the governing body, no change of municipal ordinance or plan enacted subsequent to the date of filing of the preliminary plat shall modify or revoke any aspect of the approved final plat pertaining to zoning classification or density, lot, building, street or utility location.

(v) In the case of a preliminary plat calling for the installation of improvements beyond the five-year period, a schedule shall be filed by the landowner with the preliminary plat delineating all proposed sections as well as deadlines within which applications for final plat approval of each section are

intended to be filed. Such schedule shall be updated annually by the applicant on or before the anniversary of the preliminary plat approval, until final plat approval of the final section has been granted and any modification in the aforesaid schedule shall be subject to approval of the governing body in its discretion.

(vi) Each section in any residential subdivision or land development, except for the last section, shall contain a minimum of 25% of the total number of dwelling units as depicted on the preliminary plan, unless a lesser percentage is approved by the governing body in its discretion. Provided the landowner has not defaulted with regard to or violated any of the conditions of the preliminary plat approval, including compliance with landowner's aforesaid schedule of submission of final plats for the various sections, then the aforesaid protections afforded by substantially completing the improvements depicted upon the final plat within five years shall apply and for any section or sections, beyond the initial section, in which the required improvements have not been substantially completed within said five-year period the aforesaid protections shall apply for an additional term or terms of three years from the date of final plat approval for each section.

(vii) Failure of landowner to adhere to the aforesaid schedule of submission of final plats for the various sections shall subject any such section to any and all changes in zoning, subdivision and other governing ordinance enacted by the municipality subsequent to the date of the initial preliminary plan submission.

The plain language of Section 508(4) of the Code indicates that it governs only how "[c]hanges in the [township's zoning or planning] ordinance shall affect plats...." 53 P.S. § 10508(4). *See also Traymore Associates v. Board of Supervisors of Northampton Township*, 24 Pa.Cmwlth. 564, 357 A.2d 729, 731 n. 5 (1976) ("Section 508(4), by its language, applies only to legislative changes during the pendency of an application...."). Thus, the plain language of the statute belies the conclusion of the Commonwealth Court that a

developer's failure to adhere to the provisions of Sections 508(4)(v) and (vi) of the Code may constitute a basis on which to deny preliminary plat approval in the first instance. Unless the township changes its zoning or planning ordinance, Section 508(4) has no relevance. Indeed, the Code does not contain substantive requirements related to preliminary approval; rather, such requirements are dictated by local ordinances

■ The decision of the Commonwealth Court also disregards the purpose of Section 508(4) of the Code, which is to grant the developer immunity from changes in zoning and planning laws for the duration of a development project. *See Traymore Associates,* 357 A.2d at 731 (Section 508(4) "protect[s] the developer from changes brought about by the Township during the pendency of applications for approval...."); *Devonshire Realty Corporation v. Township of Maxatawny,* 22 Pa.Cmwlth. 555, 349 A.2d 802, 804 (1976) ("We believe that Section 508(4) was intended to immunize approved plans from subsequently enacted zoning ordinances...."). The benefits of Section 508 accrue only to developers, not to townships. For instance, pursuant to Sections 508(3), a developer's plan will be deemed approved if the township does not "render a decision and communicate it to the [developer] within the time and in the manner required [by Sections 508(1) and (2)]...." 53 P.S. § 10508(3).[2] Furthermore, there is nothing in the Code that requires a developer to take advantage of the immunity that Section 508(4) offers; it can be waived like any other right or privilege. If the developer wants to get the benefit of immunity beyond the first five years of development, then he or she must comply with the schedule submission requirements of Sections 508(4)(v) and (vi). However, if the developer is willing to waive the immunity for phases beyond five years, then there is no reason for him or her to comply with the schedule submission requirements. The conclusion of the Commonwealth Court that

2. Section 508(1) requires the township to approve or disapprove a plan in writing and mail it to the developer within fifteen days, and, in case of disapproval, Section 508(2) requires the township to give specific reasons for the disapproval.

compliance with Sections 508(4)(v) and (vi) is mandatory to obtain preliminary approval transforms the statute from a shield for developers into a weapon for townships to use against developers. This interpretation is clearly contrary to the intent of the legislature in enacting Section 508(4), and therefore it cannot stand.

Finally, the Commonwealth Court overlooked caselaw indicating that the effect of noncompliance by a developer with Section 508(4) is limited to the loss of immunity from ordinance changes, not the loss of preliminary approval. In *Board of Supervisors of South Middleton Township v. Diehl,* 694 A.2d 11 (Pa.Cmwlth.1997), the developer did not commence building within the five-year period of immunity provided by Section 508(4), and the township argued that the developer's nonfeasance voided the preliminary approval of its plan. The Commonwealth Court held that the argument of the township was "clearly incorrect":

> [Section 508(4) ] only provides a developer a five-year window to develop an approved subdivision without compliance with subsequent changes in local ordinances that occur during that time. *The end of the five-year period does not render null and void the subdivision approval; it merely subjects the subdivision to the requirements of current ordinances.* A developer is always free to apply for a variance from any new requirements imposed by a change in an ordinance.

*Diehl,* 694 A.2d at 13, n. 2 (Emphasis added). The holding of *Diehl* is consistent with the Commonwealth Court's prior holding in *Ridgeview Associates v. Board of Supervisors of Lower Paxton Township,* 17 Pa.Cmwlth. 459, 333 A.2d 249 (1975):

> Nowhere in [Section 508(4) ] or anywhere else in the Municipalities Planning Code is there any authority, express or implied, for the governing body of a municipality to revoke its former approval of a preliminary development plan. To the contrary, Section 508(4) provides that, when a preliminary application has been duly approved, the applicant shall be entitled to final approval in accordance with the terms of

the approved preliminary application. This provision makes it clear that the legislature intended that a landowner could rely on the application of existing zoning to his plat, once his plan received preliminary approval. [The township's] contention that the power to give necessarily carries with it a corresponding power to take back is without merit. *A municipality is given the statutory right, prior to approving a development plan, to have the plan reviewed by its engineers and planning commission to determine whether any errors have been made. This statutory process of review, resubmission, and review insures to the municipality more than ample opportunity to meet errors and omissions.* The granting to a municipality of the authority sought here would indeed be a dubious prerogative.

*Ridgeview Associates,* 333 A.2d at 252 (Emphasis added). *See also* 53 P.S. § 10508(4)(vii) (If the developer does not "adhere to the . . . schedule of submission of final plats for the various sections" as required by subsections (v) and (vi), the developer then becomes subject "to any and all changes in zoning, subdivision and other governing ordinance enacted by the municipality subsequent to the date of the initial preliminary plan submission."). Contrary to the decision of the Commonwealth Court in the instant case, these authorities clearly reject the notion that preliminary approval is dependent on compliance with Section 508(4). Instead, they demonstrate that the concern of Section 508(4)—how "[c]hanges in the ordinance shall affect plats"—is wholly separate from the preliminary approval process.[3]

In conclusion, Section 508(4) of the Code does precisely what it purports to do—it specifies when and how changes in a township's zoning or planning ordinance will affect a development in progress. Where, as here, the development plan has not yet been preliminarily approved and there are no changes

---

**3.** The Commonwealth Court's reliance on *Herr v. Lancaster County Planning Commission,* 155 Pa.Cmwlth. 379, 625 A.2d 164 (1993), *alloc. denied,* 538 Pa. 677, 649 A.2d 677 (1994), for the proposition that a township may deny preliminary approval of a plan that fails to comply with a substantive requirement because *Herr* concerned noncompliance with a township subdivision ordinance, not a provision of the Code.

in the ordinances of the township, Sections 508(4)(v) and (vi) are simply inapplicable. Hence, we reverse the Order of the Commonwealth Court.