**[J-89-2018]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**


**SAYLOR, C.J., BAER, TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, JJ.**


| | |
|---|---|
| IN RE:  APPEAL OF THE BOARD OF COMMISSIONERS OF CHELTENHAM TOWNSHIP FROM THE DECISION DATED DECEMBER 16, 2015, OF THE ZONING HEARING BOARD OF CHELTENHAM TOWNSHIP | :  No. 3 MAP 2018<br>:<br>:  Appeal from the Order of the<br>:  Commonwealth Court at No. 1317 CD<br>:  2016 dated July 6, 2017 Affirming the<br>:  Order of the Court of Common Pleas<br>:  of Montgomery County, Civil Division,<br>:  at No. 2016-00752, dated July 7, 2016<br>:  and exited July 11, 2016. |
| APPEAL OF:  BOARD OF COMMISSIONERS OF CHELTENHAM TOWNSHIP | :<br>:  ARGUED:  December 4, 2018 |


**OPINION**


**JUSTICE BAER**                                                **DECIDED:  July 17, 2019**

Subsection 508(4)(i) of the Pennsylvania Municipalities Planning Code (MPC), 53 P.S. § 10508(4)(i), precludes a municipality from changing its "zoning, subdivision or other governing ordinance or plan" subsequent to the filing of a land development application and then applying the new version of any of these municipal enactments to the then-pending application.  In this appeal, we are tasked with determining whether Subsection 508(4)(i)'s protection of pending land development applications filed with a municipality's governing body extends to zoning applications submitted to its zoning hearing board that are: (1) related to the land development application, and (2) filed with the zoning hearing board during the pendency of the land development application and after an adverse zoning change.  For the reasons that follow, we conclude that Subsection 508(4)(i)'s protection does extend to zoning applications under these circumstances.

Because the Commonwealth Court reached the same conclusion, we affirm the order of that court.

## I. Legal Background

### A. Introduction

The MPC grants many powers to municipalities, including the authority to regulate: (1) subdivision and land development through the enactment of a subdivision and land development ordinance (SALDO), 53 P.S. § 10501, and (2) land use through the enactment of zoning ordinances, *id.* § 10601. As explained further below, part and parcel of a municipality's ability to regulate in this regard is the authority of a municipality's governing body or planning agency to approve or deny applications submitted to it for approval of "plats," or subdivision and land development plans, under the municipality's SALDO, and the authority of a municipality's zoning hearing board to approve or deny applications submitted to it for certain zoning relief pursuant to the municipality's zoning ordinances.[1] While the processes for land development approval and zoning approval are distinct from each other, there are instances where a landowner needs to obtain both types of approval in order to develop his property as desired. This case presents us with one of those instances. Accordingly, and for purposes of facilitating a better understanding of the issue before us, we begin with a brief summary of the law governing each process as is relevant to the current dispute.[2]

[1] The MPC defines a "plat" as "the map or plan of a subdivision or land development, whether preliminary or final." 53 P.S. § 10107. We use the terms "plan" and "plat" interchangeably throughout this Opinion.

[2] As discussed *infra*, this case specifically concerns: (1) a land development plan submitted to a municipality's governing body for approval, and (2) a subsequently-filed application for zoning relief in the form of special exceptions submitted to the municipality's zoning hearing board. Thus, to the extent the MPC and local ordinance provisions at issue here refer to subdivision plans, planning agency approval, and other zoning relief irrelevant to the issue before us, those references have been omitted for clarity.

## B. Land Development

The MPC mandates that a municipality's SALDO require that all land development plans for land "situated within the municipality … be submitted for approval to the governing body." *Id.* § 10501. The MPC also provides that a municipality's SALDO may include provisions concerning the specifications for, and submittal and processing of, land development plans, including "provisions for preliminary and final approval and for processing of final approval by stages or sections of development." *Id.* § 10503(1). Additionally, pursuant to the MPC, the municipality's governing body has exclusive jurisdiction to render final adjudications on all land development applications submitted for approval pursuant to Section 508 of the MPC, discussed below. *Id.* § 10909.1(b)(2).

In outlining the provisions regarding approval of land development applications, Section 508 provides information relating to, *inter alia*, the time and manner in which a municipality's governing body must render a decision on a land development application, as well as the effect of ordinance changes on a land development application. Most relevant to this appeal, Section 508 provides:

(4) Changes in the ordinance shall affect plats as follows:

(i) From the time an application for approval of a plat, whether preliminary or final, is duly filed as provided in the subdivision and land development ordinance, and while such application is pending approval or disapproval, no change or amendment of the zoning, subdivision or other governing ordinance or plan shall affect the decision on such application adversely to the applicant and the applicant shall be entitled to a decision in accordance with the provisions of the governing ordinances or plans as they stood at the time the application was duly filed. In addition, when a preliminary application has been duly approved, the applicant shall be entitled to final approval in accordance with the terms of the approved preliminary application as hereinafter provided. However, if an application is properly and finally denied, any subsequent application shall be subject to the intervening change in governing regulations.

*Id.* § 10508(4)(i).

Pursuant to the MPC's authorization, Cheltenham Township, the municipality involved in the dispute here, has a SALDO, known as the "Cheltenham Township Subdivision Code of 1974" (Subdivision Code). With respect to land development plans, the Subdivision Code includes articles pertaining to, *inter alia*, "Design Standards," "Plan Requirements," and "Plan Processing Procedures." CHELTENHAM TOWNSHIP, PA., SUBDIVISION CODE OF 1974 ch. 260, Articles III-V. Most relevant to this appeal, the Subdivision Code requires submission of a "tentative sketch plan" when, as here, the proposed land development "equals or exceeds eight (8) dwelling units or five (5) acres of land or when the plan includes nonresidential development." *Id.* § 260-35(A.). Section 260-35 further outlines the tentative sketch plan requirements and provides that the processing procedures for the tentative sketch plan are identical to those used for submission of preliminary land development plans. *Id.* § 260-35. Additionally, with respect to land development plans generally, the Subdivision Code mandates that any plan must meet the requirements of Cheltenham Township's zoning ordinance, discussed below, "unless … special exceptions have been granted by" the Cheltenham Township Zoning Hearing Board (ZHB). *Id.* § 260-31.

## C. Zoning

The MPC provides that, in enacting zoning ordinances regulating the use of land, a municipality may include "provisions for special exceptions."[3]  53 P.S. § 10603(c)(1). The MPC further requires every municipality that enacts a zoning ordinance to create a zoning hearing board, which has exclusive jurisdiction to render final adjudications on applications for special exceptions. *Id.* §§ 10901, 10909.1(a)(6). The MPC also includes

---

[3] "[A] special exception … is a use which is expressly permitted in a given zone so long as certain conditions detailed in the ordinance are found to exist." *Broussard v. Zoning Bd. of Adjustment of City of Pittsburgh*, 907 A.2d 494, 499 (Pa. 2006).

a provision addressing the effect of ordinance changes on an application for a special exception, when the subject matter of that application would ultimately constitute land development. That provision, Section 917 of the MPC, provides that when an application for special exception has been filed with the zoning hearing board,

> and the subject matter of such application would ultimately constitute … a land development as defined in section 107 … no change or amendment of the zoning, subdivision or other governing ordinance or plans shall affect the decision on such application adversely to the applicant, and the applicant shall be entitled to a decision in accordance with the provisions of the governing ordinances or plans as they stood at the time the application was duly filed. Provided, further, should such an application be approved by … the zoning hearing board … applicant shall be entitled to proceed with the submission of … land development … plans within a period of six months or longer as may be approved by … the zoning hearing board … following the date of such approval in accordance with the provisions of the governing ordinances or plans as they stood at the time the application was duly filed before … the zoning hearing board …. If … a land development … plan is so filed within said period, such plan shall be subject to the provisions of section 508(1) through (4) and specifically to the time limitations of section 508(4) which shall commence as of the date of filing such land development … plan.

*Id.* § 10917 (footnotes omitted).

Pursuant to the MPC, Cheltenham Township also has a zoning ordinance, known as the "Zoning Code." Relevant to this appeal, on February 26, 2008, the Cheltenham Township Board of Commissioners (Commissioners) enacted an ordinance amending the Zoning Code to create an age-restricted overlay district in the township (the "2008 Zoning Ordinance"). The 2008 Zoning Ordinance permitted age-restricted housing and clubhouse uses by special exception. *See* CHELTENHAM TOWNSHIP, PA., ZONING CODE ch. 295, § 295-242(B.)(1), (3) (2008). As will be discussed *infra*, Developer initially sought to develop its property at the time the 2008 Zoning Ordinance was in effect. Subsequently, on July 21, 2010, the Commissioners enacted an ordinance amending the Zoning Code

to repeal the age-restricted overlay district created by the 2008 Zoning Ordinance in its entirety.

No age-restricted overlay district existed in the township until the Commissioners enacted an ordinance on February 15, 2012, which created a new age-restricted overlay district in the township (the "2012 Zoning Ordinance"). While the 2012 Zoning Ordinance also permitted age-restricted housing and clubhouse uses by special exception, *see* CHELTENHAM TOWNSHIP, PA., ZONING CODE ch. 295, § 295-242(B.)(1), (3) (2012), it contained more stringent dimensional criteria than the 2008 Zoning Ordinance. As explained in detail below, it is the Commissioners' enactment of the 2012 Zoning Ordinance that has spurred the dispute in this matter.

## II. Factual Background and Procedural History

Having set forth the state and local law relevant to this matter, we now proceed with a discussion of the pertinent facts and procedural history. Hansen-Lloyd, L.P., (Developer) owns a large tract of land, approximately 10 acres of which are located in Cheltenham Township, and approximately 33 acres of which are located in Springfield Township. On the acreage located in Cheltenham Township (Property), Developer sought to build an age-restricted housing development consisting of 8 buildings that were 4 stories high, 388 parking spaces, and a clubhouse. Thus, under the Subdivision Code (*i.e.,* Cheltenham Township's SALDO), Developer was required to submit a tentative sketch plan for the development to the Commissioners for approval. *See* CHELTENHAM TOWNSHIP, PA., SUBDIVISION CODE OF 1974 ch. 260, § 260-35(A.) (requiring the submission of a "tentative sketch plan" for proposed developments that "equal[] or exceed[] eight (8) dwelling units or five (5) acres of land or when the plan includes nonresidential development").

On December 23, 2008, Developer submitted its mandatory tentative sketch plan (2008 Sketch Plan) to the Commissioners, who acknowledged receipt of the plan through the township engineer by letter dated January 14, 2009.[4]  At the time, the 2008 Zoning Ordinance permitting age-restricted housing and clubhouse uses by special exception was in effect.  Consequently, the January 2009 letter notified Developer that a preliminary analysis of the 2008 Sketch Plan revealed that, *inter alia*, Developer would need to obtain zoning relief in the form of a special exception for the age-restricted housing use.

Thereafter, Developer and the Commissioners entered negotiations that spanned years regarding development of the Property, including the possibility of incorporating the Property and the contiguous acreage located in adjacent Springfield Township that Developer also owned into one community.  During these lengthy negotiations, the Commissioners and Developer agreed to approximately 40 extensions of time for the Commissioners to review Developer's 2008 Sketch Plan.  *See generally* Section 508 of the MPC, 53 P.S. § 10508 (prescribing the time in which a governing body must act upon an application for approval of a land development plan such as the 2008 Sketch Plan and providing that an applicant can agree in writing to an extension of time).  To date, the 2008 Sketch Plan is still pending with the Commissioners.[5]

---

[4]   "There is no question that Developer's age-restricted development constitutes land development and that its sketch plan was a preliminary land development plan." *Bd. of Comm'rs of Cheltenham Twp. v. Hansen-Lloyd, L.P.*, 166 A.3d 496, 503 (Pa. Cmwlth. 2017).

[5] In early June 2015, Developer and the Commissioners agreed to an indefinite extension of time for consideration of the 2008 Sketch Plan "until 60 days from the date of the final decision of the [instant] zoning case including all appeals," provided that either party could "end the indefinite extension upon 60 days advanced written notice to the other party." Developer's ZHB Exhibit No. 29; *see also* Commissioners' Brief at 17, 24 n.14, 43 (explaining that the Commissioners have not reviewed the 2008 Sketch Plan); Commissioners' Reply Brief at 6, 11 (explaining that, "[t]o date, [Developer] has never sought to proceed with review of the [2008 S]ketch [P]lan, [which] has been pending since

Eventually, the negotiations between Developer and the Commissioners concerning alternate plans for the Property failed. Developer thus sought to move forward on its originally proposed age-restricted housing development set forth in the 2008 Sketch Plan that remained pending before the Commissioners. Accordingly, in May 2015, Developer filed a zoning application (the 2015 Zoning Application) with the ZHB for the zoning relief it required to construct the age-restricted housing development on the Property. As is pertinent here, while the 2012 Zoning Ordinance had replaced the 2008 Zoning Ordinance by this time, Developer sought special exceptions to permit the age-restricted housing and clubhouse uses under the 2008 Zoning Ordinance in effect at the time it filed its 2008 Sketch Plan.

The ZHB held several hearings, during the course of which the parties disputed the proper ordinance to apply in reviewing Developer's 2015 Zoning Application. As indicated above, Developer argued in favor of applying the 2008 Zoning Ordinance, which was in effect at the time Developer filed its 2008 Sketch Plan that remained pending before the Commissioners. Developer took the position that the 2008 Zoning Ordinance controlled pursuant to Subsection 508(4)(i) of the MPC, because no change in the zoning ordinance can adversely affect a pending land development plan. In contrast, the Commissioners argued in favor of applying the 2012 Zoning Ordinance, which was in effect at the time Developer filed its 2015 Zoning Application before the ZHB. The Commissioners claimed that the 2012 Zoning Ordinance governed pursuant to Section 917 of the MPC, which prevents zoning changes from adversely affecting the decision on a pending zoning application and entitles the applicant to a decision based on the ordinances in effect at the time the zoning application is filed. As noted, a determination

December 2008," and that the 2008 Sketch Plan has been pending for approximately 10 years).

as to which ordinance applied was critical to the ZHB's decision on the 2015 Zoning Application, as the parties stipulated that Developer's zoning requests would not satisfy the more stringent special exception criteria under the 2012 Zoning Ordinance.

The ZHB concluded that the 2008 Zoning Ordinance governed its review of the 2015 Zoning Application, which it ultimately granted. In reaching its conclusion, the ZHB found Subsection 508(4)(i) of the MPC to be "clear and controlling."[6] ZHB Decision, 1/28/2016, at 11. Notwithstanding that it was rendering a decision on Developer's 2015 Zoning Application, and not the 2008 Sketch Plan that remained pending before the Commissioners, the ZHB explained that it was clear from the record that the 2008 Sketch Plan and the plan filed in conjunction with the 2015 Zoning Application were the same. As such, the ZHB posited, Developer was not trying to "bait and switch" the Commissioners or ZHB by seeking relief based on a plan filed with the 2015 Zoning Application that differed from the 2008 Sketch Plan. *Id.* In other words, Developer sought zoning relief incident to and necessary for its pending land development application.

In response to the Commissioners' argument, the ZHB concluded that Section 917 of the MPC was inapplicable to the matter before it.[7] The ZHB explained that Section 917 applies where an applicant chooses to file its zoning application first, followed by the

---

[6] As previously explained, Subsection 508(4)(i) of the MPC, set forth *supra* at page 3, protects pending applications for approval of a land development plan such as the 2008 Sketch Plan from changes made to, *inter alia*, a municipality's zoning ordinance that would adversely affect the governing body's decision on that land development application.

[7] Again, Section 917, set forth *supra* at page 5, protects pending special exception applications, the subject matter of which would ultimately constitute land development (such as the 2015 Zoning Application), from changes made to a municipality's zoning ordinance after the filing of the zoning application that would adversely affect a zoning hearing board's decision on that application. It then provides the process by which a developer can proceed with its land development plan following approval of the zoning application and still receive protection from adverse zoning changes.

submission of a land development application once a decision on its zoning application is made. *Id.* at 12 (positing further that Section 917 was included in the MPC to protect the applicant who "chooses to obtain zoning relief with regard to its proposed use before going to the expense of filing full-blown land development … plans"). The ZHB reasoned that, here, Developer chose to file its 2008 Sketch Plan prior to filing its 2015 Zoning Application. Thus, according to the ZHB, Subsection 508(4)(i) of the MPC applied, and pursuant to that subsection, the 2008 Zoning Ordinance governed Developer's 2015 Zoning Application.

The Commissioners appealed to the trial court, which affirmed the decision of the ZHB without taking additional evidence. In adding to the rationale advanced by the ZHB, the trial court accepted that it is the filing of the "plan," whether done so in conjunction with either the land development application or the zoning application, and not the filing of the respective applications themselves, that vests a developer's right to develop its property in accordance with the zoning ordinance in effect at the time the "plan" is filed. Trial Court 1925(a) Opinion, 11/3/2016, at 5. The trial court posited that the law clearly permitted a developer to obtain "vesting rights" by filing either a land development application or a zoning application, and that because Developer chose to file its 2008 Sketch Plan first, it obtained vesting rights, *inter alia*, in the 2008 Zoning Ordinance. *Id.* at 6.

The Commissioners then appealed to the Commonwealth Court, reiterating their position that the 2012 Zoning Ordinance governed Developer's 2015 Zoning Application pursuant to Section 917 of the MPC because the 2012 Zoning Ordinance was in effect at the time the 2015 Zoning Application was filed. The Commissioners argued that holding that the 2008 Zoning Ordinance applied under Subsection 508(4)(i) of the MPC rendered Section 917 mere surplusage. The Commissioners claimed that it was more logical to

interpret Subsection 508(4)(i) as applying only to land development applications that do not require special exception approval, which would give meaningful effect to both Subsection 508(4)(i) and Section 917. The Commissioners also argued that, while the 2008 Zoning Ordinance governed Developer's pending 2008 Sketch Plan, the extensions of time given for the Commissioners' consideration of the 2008 Sketch Plan did not extend the applicability of the 2008 Zoning Ordinance to the 2015 Zoning Application. According to the Commissioners, Developer should have sought zoning approval for the use of the Property before seeking approval for the land development.

In a published, unanimous decision, a three-judge panel of the Commonwealth Court affirmed, concluding that the 2008 Zoning Ordinance governed Developer's 2015 Zoning Application. *Bd. of Comm'rs of Cheltenham Twp. v. Hansen-Lloyd, L.P.*, 166 A.3d 496 (Pa. Cmwlth. 2017). The Commonwealth Court observed that the language in Subsection 508(4)(i) was clear and unambiguous in that no zoning change or amendment can adversely affect a pending land development application such as the 2008 Sketch Plan and that, "[s]o long as a land development application is pending, the applicant is entitled to a decision in accordance with the provisions of the governing [zoning] ordinances … as they stood at the time the application was duly filed." *Id.* at 505. The court further explained that, while Subsection 508(4)(i) clearly protects a land development application such as the 2008 Sketch Plan from future adverse zoning ordinance changes, the question in this case was whether "this protection extends to later-filed zoning applications" such as the 2015 Zoning Application. *Id.* at 503.

Observing that its case law did not directly address the issue, the court concluded that Subsection 508(4)(i)'s "protection naturally extends to decisions regarding zoning relief where such relief is a necessary part of the land development plan." *Id.* at 505. In so doing, the Commonwealth Court rejected the Commissioners' claims that this

interpretation of Subsection 508(4)(i) rendered Section 917 mere surplusage and created an inherent conflict between Subsection 508(4)(i) and Section 917. Having previously explained that "Section 917 permits an applicant, whose plans will culminate in land development[,] … to seek zoning relief first and still receive protection from subsequent amendments for any future-filed … land development plan," the court posited that both Subsection 508(4)(i) and Section 917 "can be reasonably interpreted depending on which application is filed first." *Id.* at 504-05. The Court thus explained that Subsection 508(4)(i) applies when an applicant first files a land development application, and Section 917 applies if an applicant first files an application for zoning relief. The court reasoned that this result gave meaning to both provisions.

Turning to the facts of this case, the Commonwealth Court stated that the Subdivision Code (*i.e.*, Cheltenham Township's SALDO) required that Developer submit a sketch plan and that the sketch plan meet the requirements of the Zoning Code unless special exceptions have been granted by the ZHB. *Id.* (quoting Subsection 260-35(A.) of the Subdivision Code, *supra* at page 4 (outlining the circumstances in which a tentative sketch plan is required); and Section 260-31 of the Subdivision Code, also *supra* at page 4 (requiring land development plans to meet the requirements of the Zoning Code unless special exceptions have been granted by the ZHB)). The court further noted that the 2008 Zoning Ordinance was in effect at the time Developer submitted, and the township engineer accepted, the 2008 Sketch Plan, and that a preliminary analysis of the 2008 Sketch Plan revealed that Developer would need to obtain zoning relief in the form of a special exception for the development under the 2008 Zoning Ordinance.

The Commonwealth Court stated that, while Developer did not ultimately seek zoning relief until May 2015, its 2008 Sketch Plan was still pending before the Commissioners at that time. The court observed that Developer needed zoning relief to

proceed with its land development as originally proposed in the 2008 Sketch Plan and that Subsection 508(4)(i) of the MPC protects land development applications from adverse zoning changes. *Id.* Thus, as Developer stipulated that its zoning requests would not meet the special exception criteria under the 2012 Zoning Ordinance, the court concluded that the change in the zoning law would have adversely affected Developer's pending 2008 Sketch Plan.

The court continued by observing that to hold that Subsection 508(4)(i)'s protection applies only to land development applications, and not zoning applications, would eviscerate that "protection by enabling municipalities to change zoning ordinances upon receipt of any undesired land development plans to thwart approval" and "require applicants to request zoning relief first before seeking … land development approval, as opposed to providing applicants a choice regarding how to proceed." *Id.* at 505-06. The court further explained that requesting zoning relief would be an unnecessary step in instances where a governing body does not approve the land development application. Thus, the court held that the ZHB properly determined that the 2008 Zoning Ordinance governed Developer's zoning application pursuant to Subsection 508(4)(i) of the MPC.

### III. Issue

This Court granted discretionary review to answer the following question, as posed by the Commissioners: "Did the Commonwealth Court overlook the express language of 53 P.S. [§] 10917 by holding that a zoning application for special exception is governed by an ordinance other than the ordinance in effect when the zoning application was filed?" *In re Bd. of Comm'rs of Cheltenham Twp.*, 179 A.3d 1079 (Pa. 2018) (*per curiam*). The question presented is one of law, as it requires us to engage in statutory interpretation. *Thomas Jefferson Univ. Hosps., Inc. v. Pa. Dep't of Labor & Indus.*, 162 A.3d 384, 389

(Pa. 2017). Accordingly, our standard of review is *de novo*, and our scope of review is plenary. *Id.*

## IV. Analysis

We are guided in our analysis by the Statutory Construction Act, 1 Pa.C.S. §§ 1501-1991, which directs us to ascertain and effectuate the intent of the General Assembly. *Id.* § 1921(a). "It is axiomatic that the best indication of legislative intent is the plain language of the statute." *Doe v. Franklin Cnty.*, 174 A.3d 593, 605 (Pa. 2017). When the words of a statute are clear and unambiguous, we may not look beyond the statutory language to discern its meaning "under the pretext of pursuing its spirit." *Thomas Jefferson Univ. Hosps., Inc.*, 162 A.3d at 389 (quoting 1 Pa.C.S. § 1921(b)). Thus, it is only when the statute is ambiguous that we resort to consideration of the various factors listed in Subsection 1921(c) of the Statutory Construction Act for purposes of discerning the Legislature's intent. *Brewington ex rel. Brewington v. City of Philadelphia*, 199 A.3d 348, 355 (Pa. 2018). Lastly, we are mindful that every statute is to be read so as "to give effect to all its provisions." 1 Pa.C.S. § 1921(a).

As indicated above, the Commissioners take the position that Developer's 2015 Zoning Application is governed by the provisions of the 2012 Zoning Ordinance pursuant to Section 917 of the MPC. The Commissioners offer a plethora of arguments in support of their position, a majority of which are rooted in statutory construction principles and track their arguments made before the Commonwealth Court. The Commissioners maintain that both Subsection 508(4)(i) and Section 917 are clear and unambiguous with respect to the manner in which they apply and the protections they offer.[8] Specifically, the Commissioners argue that Subsection 508(4)(i) refers only to land development

---

[8] The Commissioners also claim that, to the extent the statutory language at issue is ambiguous, various statutory construction principles support their position.

applications, not to any associated zoning applications, and thus protects only land development applications from subsequent adverse ordinance changes. The Commissioners further argue that, on the other hand, Section 917 refers to zoning applications (the subject matter of which would ultimately constitute land development) and land development applications, and, if followed, protects both applications from subsequent adverse ordinance changes.[9]

The Commissioners further contend that the lower tribunals ignored the express language of Section 917 under the pretext of pursuing the spirit of Subsection 508(4)(i). Indeed, the Commissioners criticize the Commonwealth Court's observation that Subsection 508(4)(i)'s protection "naturally extends to decisions regarding zoning relief where such relief is a necessary part of the land development plan" as being "facile" and legally unsupported. Commissioners' Brief at 15 (quoting *Bd. of Comm'rs of Cheltenham Twp.*, 166 A.3d at 505) (emphasis omitted). The Commissioners argue that the lower tribunals failed to place any weight on the distinctions between land development application procedures and zoning application procedures, and that the Commonwealth Court's holding risks blurring the boundaries between the two to the detriment of the public interest.

In support of its contrary position that the 2008 Zoning Ordinance governs its 2015 Zoning Application, Developer reiterates much of the reasoning offered by the tribunals below. In so doing, Developer claims that both Subsection 508(4)(i) and Section 917 recognize that the filing of either a land development application or a zoning application "vests the plan with the zoning ordinance in effect at the time of filing" and, thus, "vesting rights" may be obtained by filing either application. Developer's Brief at 16, 26. Developer

---

[9] The Commissioners thus argue that applicants can fully protect their property interests against subsequent zoning changes by filing their zoning applications prior to, or at least simultaneously with, their land development applications.

contends that there is no requirement in the MPC or otherwise that an applicant file both applications simultaneously or seek zoning approval prior to obtaining approval of a land development plan to obtain vesting rights in an existing ordinance. Developer argues that, because it filed its 2008 Sketch Plan first, its rights vested in the 2008 Zoning Ordinance pursuant to Subsection 508(4)(i) of the MPC.

Additionally, Developer argues that the Commonwealth Court did not overlook Section 917 as the Commissioners claim, but rather read that section together with Subsection 508(4)(i) in correctly holding that Developer's submission of its land development application vested its rights to develop the Property under the 2008 Zoning Ordinance pursuant to Subsection 508(4)(i). Developer contends that it is the Commissioners who overlook the plain language of Subsection 508(4)(i) protecting pending land development applications from adverse ordinance changes, which protection "'naturally extends' to decisions regarding zoning relief where [that] relief is a necessary part of the land development plan." *Id.* at 17-18 (quoting *Bd. of Comm'rs of Cheltenham Twp.*, 166 A.3d at 505).[10] With regard to Section 917, Developer echoes the Commonwealth Court's observation that "Section 917 permits an applicant, whose plans will culminate in land development[,] … to seek zoning relief first and still receive protection from subsequent amendments for any future-filed … land development plan." *Id.* at 15 (quoting *Bd. of Comm'rs of Cheltenham Twp.*, 166 A.3d at 504)).

Developer further challenges the Commissioners' claim that the Commonwealth Court's decision will erode the boundaries between land development proceedings and

---

[10] Developer notes that this Court has recognized that the purpose of Subsection 508(4) is to grant the developer immunity from changes in zoning and planning laws for the duration of a development project, which Developer claims regularly entails the pursuit of zoning relief "during the pendency of the plan," and to protect the developer from changes brought about by the governing body during the pendency of applications for approval. Developer's Brief at 16 (relying upon *Meadows of Hanover Dev., Inc. v. Bd. of Supervisors of South Hanover Twp.*, 734 A.2d 854, 857 (Pa. 1999)).

zoning proceedings, as Developer has never claimed that it was free from obtaining special exception approval. Developer also reiterates its position that an applicant has two ways in which it can receive protection for its proposed development from subsequent adverse ordinance changes: commence the development process by filing a land development plan under Subsection 508(4)(i), or begin by filing a zoning application under Section 917. Developer argues that this case concerns the MPC's protection against the very conduct of the Commissioners at issue here, where an ordinance is passed with the aim of preventing a proposed pending development.

As stated previously, the language of Subsection 508(4)(i) of the MPC relevant to the issue before us provides that, while a duly-filed land development application is pending, "no change or amendment of the zoning … ordinance … shall affect the decision on such application adversely to the applicant and the applicant shall be entitled to a decision in accordance with the provisions of the governing ordinances … as they stood at the time the application was duly filed." 53 P.S. § 10508(4)(i). The relevant language of Section 917 parallels that of Subsection 508(4)(i) by providing that while an application for a special exception related to land development is pending, "no change or amendment of the zoning … ordinance … shall affect the decision on such application adversely to the applicant, and the applicant shall be entitled to a decision in accordance with the provisions of the governing ordinances … as they stood at the time the application was duly filed." 53 P.S. § 10917.

The above language of Subsection 508(4)(i) and Section 917 clearly provides the same type of protection for a proposed development project. Specifically, both provisions protect pending applications (land development applications under Subsection 508(4)(i) and zoning applications under Section 917) that are filed in relation to a development project from zoning changes that are made during the pendency of the respective

application and would adversely affect the decision on the respective application. Importantly, neither Subsection 508(4)(i) nor Section 917 requires submission of one application before the other, and the parties do not cite, nor have we uncovered, any provision of the MPC, Subdivision Code, or Zoning Code that imposes such a requirement. Thus, Developer was free to begin the development process with the filing of either a land development application under Section 508 of the MPC, or a zoning application under Section 917 of the MPC.

Developer chose to file its land development application, *i.e.* the 2008 Sketch Plan, first under Section 508 of the MPC. The 2008 Zoning Ordinance was in effect at the time Developer submitted the 2008 Sketch Plan. Thus, pursuant to Subsection 508(4)(i), Developer is entitled to a decision on the 2008 Sketch Plan in accordance with the 2008 Zoning Ordinance as long as the 2008 Sketch Plan remains pending. As explained above, the 2008 Sketch Plan has remained pending for years, during which: (1) the 2012 Zoning Ordinance replaced the 2008 Zoning Ordinance, and (2) Developer filed its related 2015 Zoning Application. As observed by the Commonwealth Court, the replacement of the 2008 Zoning Ordinance with the 2012 Zoning Ordinance constituted a zoning change that was adverse to Developer's 2008 Sketch Plan, as the parties stipulated that Developer's zoning requests do not meet the criteria under the 2012 Zoning Ordinance for a special exception, two of which are needed for the proposed development. Thus, the protection offered by Subsection 508(4)(i) shields Developer's 2008 Sketch Plan from disapproval by the Commissioners based on the 2012 Zoning Ordinance.

As for whether Subsection 508(4)(i)'s protection extends to Developer's 2015 Zoning Application, we observe that, while it does not dictate the order in which land development applications and zoning applications are to be filed, the Subdivision Code (again, Cheltenham Township's SALDO) does require that Developer's 2008 Sketch Plan

comply with the Zoning Code unless the ZHB has granted special exceptions. Here, Developer needs zoning relief in the form of special exceptions for its proposed age-restricted housing and clubhouse uses depicted in the pending 2008 Sketch Plan. Under these circumstances, where "zoning relief is a necessary part of the land development plan," we agree with the Commonwealth Court that Section 508(4)(i)'s protection of pending land development plans extends to the decisions on the requested zoning relief needed for purposes of land development plan approval.

In so doing, we further agree with the Commonwealth Court that to hold otherwise would enable a municipality to disapprove a pending land development plan based on a zoning change adverse to the land development plan in contravention of the protection offered by Subsection 508(4)(i). For instance, it is undisputed that Developer's zoning requests do not meet the special exception criteria of the 2012 Zoning Ordinance. Thus, if the 2012 Zoning Ordinance were to apply to the 2015 Zoning Application here, the 2015 Zoning Application would be denied. Without the special exceptions, Developer's 2008 Sketch Plan would also be denied pursuant to Section 260-31 of the Subdivision Code. Thus, the denial of the 2008 Sketch Plan would be based on a zoning change adverse to the 2008 Sketch Plan that was made during the pendency of 2008 Sketch Plan, which is prohibited by Subsection 508(4)(i) of the MPC.[11]

Based on the foregoing, we hold that the Commonwealth Court did not err when it held that the 2008 Zoning Ordinance governed Developer's 2015 Zoning Application by

[11] Section 917 is not in tension with our holding. As the Commonwealth Court explained, Section 917 provides an alternative method by which a developer can begin the development process and remain shielded from adverse zoning amendments. Specifically, Section 917 permits the developer "to seek zoning relief first and still receive protection from subsequent amendments for any future-filed … land development plan." *Bd. of Comm'rs of Cheltenham Twp.*, 166 A.3d at 504. Our interpretation of Subsection 508(4)(i) permits the developer to seek land development approval first and receive that same protection for future-filed zoning applications. Thus, like the Commonwealth Court, we perceive no conflict between the two provisions in light of this interpretation.

way of extension of Subsection 508(4)(i)'s protection of pending land development plans from adverse zoning changes.  Thus, we affirm the order of the Commonwealth Court.

Chief Justice Saylor and Justices Donohue and Dougherty join the opinion.

Justice Wecht files a dissenting opinion in which Justice Todd joins.

Justice Mundy did not participate in the consideration or decision of this case.