IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Core5 at Valley Commerce      :
Center, LLC      :
     :
        v.      : No. 588 C.D. 2024
     : Argued: April 8, 2025[1]
Lowhill Township,      :
     :
         Appellant      :


BEFORE:    HONORABLE MICHAEL H. WOJCIK, Judge
              HONORABLE CHRISTINE FIZZANO CANNON, Judge
              HONORABLE LORI A. DUMAS, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK               FILED: September 10, 2025

       Lowhill Township (Township) appeals from the April 8, 2024 order of the Lehigh County Court of Common Pleas (trial court), which sustained Core5 at Valley Commerce Center, LLC's (Developer) appeal, reversed the Township's decision denying Developer's final plan, and approved the final plan. The Township argues that the trial court erred or abused its discretion by finding that Developer's preliminary land development plan and final land development plan were "essentially the same" and failing to condition deemed approval on compliance with all Township codes and regulations. Upon review, we affirm.

---

[1] Following argument, this matter was referred to mediation and temporarily held in abeyance. The matter was not resolved in mediation and was reinstated for decision on August 4, 2025.

# I. Background

Developer is the equitable owner of approximately 43 acres of land located at 2766 State Route 100 in the Township (the Property), which is situated in the Rural Village District under the Township's Zoning Ordinance. On May 9, 2022, Developer's predecessor, Trammel Crow Corporation (Trammel Crow), filed a preliminary land development plan (Preliminary Plan) to develop a 312,120-square-foot warehouse facility with associated parking, trailer storage spaces, and stormwater management (Project) on the Property. *See* Reproduced Record (R.R.) at 281a. In conjunction with the Preliminary Plan, Trammel Crow also submitted a sewage facilities planning module. *See id*. at 288a. At the time the Preliminary Plan and sewage module were submitted, public water service for the Property was contemplated. Consequently, the Preliminary Plan did not include any plans for a water line extension.

In response to the Preliminary Plan, on May 23, 2022, the Township's engineering representative, Keystone Consulting Engineers (KCE), issued a comment letter. R.R. at 94a-97a. In the letter, KCE noted that the Preliminary Plan contained 47 plan sheets. *Id*. at 94a. The letter acknowledged approval of an on-lot sewerage system, and the need for outside agency review and approvals, including the Lehigh County Authority (Authority) for water service. *Id*. KCE requested additional details under the Township's Subdivision and Land Development Ordinance (SALDO) primarily relating to stormwater (*e.g.*, concrete aprons on all endwall details; location of the drainage easement and meadows; the inclusion of a missing stormwater report; clarifications pertaining to water quality calculations and methodologies; winterization plans for spray irrigation; confirmation of setback distances relating to infiltration best management practices; and pipe capacity

2

conveyance calculations) and a traffic study. *Id*. at 95a-97a. The letter noted additional outside agency reviews and approvals are required, including the Authority for water service. *Id*. at 94a.

KCE also served as the Township's Sewage Enforcement Officer (SEO) and sent a comment letter related to the sewage facilities planning module associated with the Preliminary Plan on March 23, 2022. R.R. at 299a-300a. KCE requested to see proposed drinking water supply on the plan. *Id*. at 299a.

On June 16, 2022, at the Township's Board of Supervisors meeting, the Supervisors considered the Preliminary Plan along with two other proposed warehouse projects. R.R. at 55a-58a. The Supervisors voted 2-1 to approve the Preliminary Plan and the related sewage facilities planning module as reflected in the meeting minutes. *Id*. at 57a-58a. However, the Supervisors never issued a written decision in support of setting forth conditions.

Shortly thereafter, on June 27, 2022, the Township and Authority entered into a Water Service Agreement Addendum (Addendum) to extend potable water service to portions of Township, including the Project. Original Record (O.R.) at 602.[2]

At some point thereafter, Developer became the equitable owner of the Property. On May 9, 2023, Developer filed a final land development plan (Final Plan) for the Project. R.R. at 180a; *see id*. at 38a. The Project narrative stated that public water service is being proposed. *See id*. at 177a.

On May 11, 2023, the Township Supervisors voted to terminate/rescind approval of the Addendum, thereby eliminating plans to extend public water to the Property. O.R. at 602; *see* R.R. at 234a. The Addendum was rescinded because the

---

[2] Page numbers to the Original Record reflect electronic pagination.

Township adopted the Northern Lehigh Multi-Municipal Comprehensive Plan in September 2022. O.R. at 602.

On May 22, 2023, KCE issued a pair of comment letters relating to the Final Plan and related sewage facilities planning module. R.R. at 173a-79a; *see id*. at 108a-14a. In the letters, KCE noted that the Final Plan comprised 49 plan sheets. KCE made the same comments to the Final Plan as previously made on the Preliminary Plan. R.R. at 216a; *compare* R.R. at 173a-76a *with id*. at 94a-97a. In addition, KCE requested to see the metes and bounds for the drainage/stream easement; proposed maintenance practice for steep slopes and detention ponds; a safety fence, as-built plans, retaining wall designs; proof of ownership; engineer name substitution; zoning hearing board determinations; monuments and markers; and an improvements estimate. R.R. at 175a-76a. Critically, KCE noted a lack of public water service because the Township Supervisors rescinded the Addendum and denied the extension of the water main to the Property. *Id*. at 177a.

Under the impression that the Preliminary Plan was conditionally approved, Developer's engineering firm, Pennoni Associates Inc. (Pennoni), revised the Final Plan on May 31, 2023, to provide additional details as requested by the KCE comment letters. By response letter dated June 21, 2023, Pennoni addressed the May 22, 2023 KCE comment letters point by point and explained the revisions. R.R. at 223a-31a. As revised, the Final Plan depicts, provides, and/or includes: concrete aprons on all endwall details; a proposed drainage easement with metes and bounds; meadow areas; proposed grading along the subject properties to provide positive drainage toward inlets; applicable setbacks; recharge volume calculations; winterization for spray irrigation details; a detailed operation and maintenance plan for privately-owned stormwater management; a four-foot high chain-link safety

4

fence; monuments and markers; and a water line extension plan contemplating access to public water. *Id*. Pennoni stated that "no change is being proposed as part of the [Final Plan] submitted to the Township." *Id*. at 228a.

In response to the revisions, KCE issued two additional review letters on July 6, 2023 (SEO), and July 11, 2023 (civil engineering), each containing new deficiencies related to zoning, stormwater, and water/sewer service. R.R. at 203a-04a, 216a-20a.

At the July 13, 2023 meeting, the Township's Supervisors voted to deny the Final Plan. On July 25, 2023, the Supervisors, through counsel, issued a written letter decision in support. Per the decision, the Supervisors considered the Final Plan, last revised May 31, 2023; five review letters from KCE, one each dated July 11, 2023, July 6, 2023, and May 23, 2022, and two dated May 22, 2023; the Pennoni response letter; and public comment from interested residents. R.R. at 11a. The denial stated that approval for the Preliminary Plan was conditioned on full compliance with KCE's May 23, 2022 comment letter. *Id*. at 11a. The Supervisors denied the application based on Developer's failure to address KCE's outstanding review comments and other deficiencies noted by the Supervisors. *Id*. at 12a. The deficiencies included the failure to plan for water and sewage in the absence of public service to the site; zoning and engineering issues; deficiencies in the stormwater management plan; and failure to identify an end user to quantify environmental impacts. *Id*. at 12a-14a.

From this decision, Developer timely filed a notice of land use appeal with the trial court. The trial court accepted briefs and heard oral argument but did not take additional evidence. On April 8, 2024, the trial court entered an order accompanied by an opinion. The trial court concluded that the Preliminary Plan was

deemed approved *without conditions* based on the Township's failure to issue a written decision. The trial court further concluded that the Final Plan was essentially the same as the Preliminary Plan thereby triggering an automatic approval. The trial court opined: "The only differences the Township highlights are that the Preliminary Plan was submitted to the Township by [Developer]'s predecessor-in-equitable-ownership . . . and vague references to unspecified revisions; yet the Township fails to explain how any of these supposed changes significantly alter the essence of the Preliminary Plan." Trial Court Op., 4/8/24, at 6. Thus, the trial court sustained Developer's appeal, reversed the Township's decision, and approved the Final Plan as submitted on May 9, 2023.

The Township thereafter filed a notice of appeal in this Court. The Township also filed a Statement of Errors complained of on appeal with the trial court per Pa.R.A.P. 1925(b). On July 1, 2024, the trial court filed a Pa.R.A.P. 1925(a) opinion incorporating by reference the reasoning set forth in its April 8, 2024 opinion. This Court heard argument on April 8, 2025. Afterwards, this Court directed the Township to supplement the original record by filing half-size hard copies of the Preliminary Plan filed on May 23, 2022, the Final Plan filed on May 9, 2023, and all plan revisions.

## II. Issues

On appeal, the Township presents two questions for our review.[3] First, the Township asks whether the trial court abused its discretion or committed an error

---

[3] Where the trial court takes no additional evidence, our review in a land use appeal is limited to determining whether the local governing body committed an error of law or an abuse of discretion. *Zajdel v. Board of Supervisors of Peters Township*, 925 A.2d 215, 218 n.6 (Pa. Cmwlth. **(Footnote continued on next page…)**

6

of law in finding that Developer's Preliminary Plan and Final Plan are "essentially the same," without giving any consideration to the myriad of substantive differences between the plans and in the applications. Second, the Township challenges whether the trial court abused its discretion or committed an error of law by issuing a final order that fails to state that Developer's Final Plan is deemed approved only upon compliance with all Township codes and regulations in effect.

### III. Discussion
### A. Substantially the Same
### 1. Contentions

First, the Township contends that the Developer is not entitled to automatic approval because the Final Plan is not substantially the same as the Preliminary Plan. The Final Plan represented a new submission subject to Township review, which the Township correctly denied. The Township asserts three differences between the two plans. First, the Preliminary Plan was submitted to the Township over a year before and by a different applicant. Second, according to the Township, the Preliminary Plan originally contained 38 sheets,[4] and was revised to include 47 sheets; the Final Plan, as revised, contained 57 sheets, including 10 additional engineered drawings, and new designs for structure and improvements never before shown to or approved by the Township. And third, in response to KCE's engineering comments on the Final Plan, Developer's engineer Pennoni identified numerous revisions to the Preliminary Plan, including: the addition of concrete aprons on all endwall details; a proposed drainage easement containing the

---

2007). A governing body abuses its discretion when its findings of fact are not supported by substantial evidence. *Id*.

[4] We are unable to find any support in the record to confirm that the Preliminary Plan was originally 38 sheets.

assumed floodplain area of the existing onsite stream; proposed grading along the subject properties revised to provide positive drainage toward specific inlets; applicable setbacks for infiltration for best management practices; grading to indicate that the proposed spray irrigation infiltration areas are located greater than 100 feet away from neighboring existing residential buildings, wells, and septic; proposed spray irrigation revised to clarify ownership and responsibility; proposed spray irrigation easement with metes and bounds; four-foot chain-link fence; and design of waterline extensions. *See* R.R. at 182a-90a.

According to the Township, the most significant difference between the Preliminary Plan and the Final Plan is the proposed source of water to the Project and its fire suppression system by extension line. The Preliminary Plan assumed the use of public water but did not include any plans for an extension of the Authority's potable water system. In stark contrast, the Final Plan included proposed water line extension plans that have not been reviewed or approved by the Township or approved by the Authority. According to the Township, these changes represent far more than the addition of engineering details. Therefore, the Township maintains that the Final Plan is not "essentially the same" as the Preliminary Plan.

Developer counters that the Township waived this issue by failing to properly develop it before the trial court. On appeal to the trial court, the Township merely advanced that the name of the applicant was different. Otherwise, the Township did not provide any meaningful differences between the plans let alone explain why those differences were substantial. Even its Pa.R.A.P. 1925(b) Statement is deficiently vague by referring to a "myriad [of] substantive differences," but offering no meaningful explanation. O.R. at 659. The Township cannot now complain that the trial court abused its discretion when the Township

8

abdicated its role in the litigation and failed to provide the necessary advocacy on the issue.

Alternatively, if not waived, Developer defends that the Final Plan and the Preliminary Plan are substantially similar, as evidenced by KCE's substantively identical review letters from May 22, 2022, and May 22, 2023, and the Township fails to show otherwise. Throughout this litigation, the Township has demonstrated a "propensity to 'tell' rather than 'show.'" Respondent's Brief at 16. The Township has had three opportunities to highlight differences between the Preliminary Plan and the Final Plan, once in its decision disapproving the Final Plan, once before the trial court, and now before this Court. Only in this appeal does the Township provide actual examples, which are based on the Pennoni response letter. In so doing, the Township misstates and misconstrues the facts and tries to argue that the revisions made to the Final Plan are substantial dissimilarities justifying denial. Although Developer was entitled to proceed based on its approved Preliminary Plan without conditions, Developer made revisions to the Final Plan by providing additional details as requested by KCE in the comment letters in a show of good faith. The changes between the Preliminary Plan and the revised Final Plan are merely the addition of engineering details, including a fully engineered design for a new water line extension. Developer notes that the key difference cited between the plans – the addition of a fully engineered design for a new water line extension – was caused by the Township's bad faith conduct of rescinding the Addendum immediately after the Final Plan was filed.

## 2. Analysis

We first address Developer's waiver argument. Upon review, the Township clearly *raised* the issue before the trial court during argument and in its

9

"Response Brief." O.R. at 488-91, 659-60. However, the Township did not adequately *develop* the argument or provide any meaningful differences between the plans for the trial court. Before the trial court, the Township first and foremost relied on the fact that a different developer presented the Preliminary Plan, but it never explained the significance of an applicant change. *Id*. at 491. The Township also asserted that Developer revised the Preliminary Plan in response to engineering comments, but the Township did not identify those differences with any specificity or otherwise explain their significance. *Id*. 488-91; *see* O.R., Trial Court Notes of Testimony (Argument), 1/9/24, at 14, 16.[5] Notwithstanding the Township's failure to adequately develop the issue below, the trial court fully considered the issue, compared the plans, and determined there was no significant difference between them. The Township has preserved the issue in its appeal here and has more fully developed its argument regarding the differences. We, therefore, decline to find waiver.

Turning to the crux of the matter, Section 508 of the Pennsylvania Municipalities Planning Code (MPC)[6] governs approval of plats. Section 508(1) of the MPC requires a governing body to issue a written decision on all applications for approval of a plat, whether preliminary or final, within 15 days of its decision. 53 P.S. §10508(1). Where a governing body fails to render a decision within the time and manner prescribed, it amounts to a "deemed an approval of the application in terms as presented." *See* 53 P.S. §10508(3). This provision "was enacted to remedy indecision and protracted deliberations on the part of local governing bodies, to eliminate deliberate or negligent inaction on the part of government officials

---

[5] The transcripts of testimony were filed as a separate document.

[6] Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §10508.

10

. . . and to assure that an unsuccessful applicant is provided with bases for appeal." *Timothy F. Pasch, Inc. v. Springettsbury Township Board of Supervisors*, 825 A.2d 719, 721 (Pa. Cmwlth. 2003) (citations omitted).

Section 508(4)(i) of the MPC further provides that when a preliminary application has been duly approved, whether by vote or statutory deemer, "the applicant shall be entitled to final approval in accordance with the terms of the approved preliminary application . . . ." 53 P.S. §10508(4)(i); *see Annand v. Board of Supervisors of Franklin Township*, 634 A.2d 1159 (Pa. Cmwlth. 1993). The General Assembly "intended that a landowner could rely on the application of existing zoning to his plat, once his plan received preliminary approval." *Ridgeview Associates v. Board of Supervisors of Lower Paxton Township*, 333 A.2d 249, 252 (Pa. Cmwlth. 1975). However, a final plan is subject to the MPC's compulsory approval *only if* it is "substantially the same" as the previously approved plan. *Rickert v. Latimore Township*, 960 A.2d 912 (Pa. Cmwlth. 2008); *accord Weiser v. Latimore Township*, 960 A.2d 924 (Pa. Cmwlth. 2008).

In *Annand*, a landowner with a deemed approved preliminary subdivision plan challenged the township's rejection of his final plan on the basis of alleged zoning violations. This Court held that the township erred in rejecting the final plan after the preliminary plan was deemed approved on this basis. 634 A.2d at 1161. We explained that a preliminary plan relates only to subdivision and land development matters, not to zoning matters. *Id*. We opined: "To be approved, the final plan needed *only to be the same plan as the deemed-approved preliminary plan with the additional engineering details required by the subdivision ordinance*. The final plan met this requirement and it should have been approved . . . ." *Id*. (emphasis added).

11

Later, in *Rickert*, we applied the same rationale. 960 A.2d at 915. Therein, the landowners filed a final land development plan, which was "essentially identical to" and "substantially the same as" the deemed approved preliminary plan. *Id*. at 915, 917. Despite the similarity between plans, the township rejected the final plan because of zoning issues. We opined: "Once a preliminary application has been approved, the application is entitled to final approval in accordance with the original preliminary application. Thus, final approval of a subdivision plan i*s automatic unless the final plan is different from the preliminary plan*." *Id*. at 919 (quoting *Graham v. Zoning Hearing Board of Upper Allen Township*, 555 A.2d 79 (Pa. 1989)). Because the plans were "substantially the same," we determined the township erred by not approving the final plan. *Id*. at 919.

Conversely, in *Wynnewood Co. v. Board of Supervisors of Whitemarsh Township*, 24 Pa. D. & C.3d 216, 218 (C.P. Montgomery 1980), *aff'd* 455 A.2d 742 (Pa. Cmwlth. 1983), we upheld the governing body's denial of the landowner's application for final subdivision approval because there were significant differences between the final plan and the approved preliminary plan as identified by the township staff. As the trial court explained:

> First, the landowner's revised final plan does not conform to its preliminary plan. The landowner's preliminary plan gave the impression that the subject area could be easily developed. However, when the revised final plan was presented, *dramatic differences in contour were revealed for the first time*. In fact, the differences were *sufficiently significant* to suggest that the landowner may have been attempting to mislead the board. Second, *the revised final plan described numerous other defects including ones relating to on-lot grading and the existence of excessively steep slopes*. These defects were not present nor discoverable in the landowner's preliminary plan by virtue of the fact that *greater detail is required for final plans*.

12

24 Pa. D. & C.3d at 218 (footnotes omitted; emphasis added).

Here, because the Township failed to issue a written decision within 15 days, the Preliminary Plan was deemed approved as presented without conditions. Developer was entitled to approval of its Final Plan *as filed* on May 9, 2023, upon the same terms as the Preliminary Plan, provided it was substantially similar.

The Township contends that the Final Plan was not substantially similar to the Preliminary Plan to trigger automatic approval. As for the differences, the Township first cites to the fact that the plans were filed by different entities. However, the MPC's definition of an "applicant" is "a landowner or developer, as hereinafter defined, who has filed an application for development including his heirs, *successors and assigns*." Section 107 of the MPC, 53 P.S. §10107. Developer is clearly a successor in interest. Therefore, this is a distinction without significance.

As for the other purported differences, as noted by KCE, the Preliminary Plan filed on May 9, 2022, contained 47 sheets, R.R. at 94a, and the Final Plan, filed on May 9, 2023, contained 49 sheets, *id*. at 173a. In response to the Final Plan, KCE issued the comment letter dated May 22, 2023. The May 22, 202<u>3</u> comment letter provides identical comments as previously contained in the May 23, 202<u>2</u> comment letter directed towards the Preliminary Plan. *Id*. at 94a-97a, 173a-76a. As explained by KCE, that is because "the comments of [the] May 22, 2023 review letter [to the Final Plan] are from the Preliminary Plan review of May 23, 2022." *See id*. at 216a. The renewal of the same comments lends support that the Final Plan as filed on May 9, 2023, was substantially the same, if not exactly the same, as the Preliminary Plan that was deemed approved.

13

Further, Pennoni's engineer, Josh Hoffman, testified at the July 13, 2023 Board of Supervisors meeting on behalf of Developer that the plans were "exactly" the same. *Id*. at 270a. More particularly, he testified:

> The [Preliminary P]lan was approved *exactly* as it is on the [F]inal [P]lan by the [T]ownship. We went through this in great detail during the preliminary process. We have changed nothing. As far as the lay out and how this site was designed from the [P]reliminary [P]lan to the [F]inal [P]lan. The [P]reliminary [P]lan was approved by the [T]ownship *exactly the way you see it*. The slopes and the way the site is laid out.

*Id*. (emphasis added). Hoffman also confirmed that the sewage planning module and all sewage flows were identical to what was previously provided for and approved on the Preliminary Plan. *Id*. at 264a. Our review of the plans substantiates this assessment. The Township fails to demonstrate otherwise.

Because the Preliminary Plan was deemed approved, it was not subject to conditions as set forth in the May 23, 2022 comment letter from KCE. Yet, the Township denied the Final Plan based on outstanding deficiencies as identified by the KCE comment letters, including the May 23, 2022 comment letter. The Township's attempt to reattach the same comments to the Final Plan as previously made to the Preliminary Plan runs afoul of Section 508 of the MPC. The Township lacked authority to deny the Final Plan as filed on May 9, 2023, on this basis.

Notwithstanding, in response to the Township's concerns as expressed in the KCE comment letters to the Final Plan, Developer revised the Final Plan to provide further details, including a water line extension plan. Developer maintains it was motivated by good faith to work with the Township, but Developer also operated under the mistaken assumption that the deemed approval was conditional subject to the KCE comment review. *See* R.R. at 172a, 187a.

14

As of the May 31, 2023 revision, the Final Plan contained 57 sheets and provided greater detail. R.R. at 216a. As explained by the Pennoni response letter, the *revised* Final Plan shows, *inter alia*, concrete aprons on all endwall details, proposed drainage easement with metes and bounds, anti-seep collar locations; slopes as landscape restoration meadows; a four-foot chain-link safety fence; monuments and markers; and a water line extension plan. *Id*. at 223a-30a. On appeal, this is where the Township now attempts to draw more differences in support of its position that the plans are not the same or substantially similar. However, the *revised* Final Plan is not the applicable plan. Rather, the Final Plan filed on May 9, 2023, is. Because the Final Plan filed on May 9, 2023, is substantially similar to the Preliminary Plan, it is entitled to final approval in accordance with the original Preliminary Plan application.[7]

As for the lack of public water, at the time the Preliminary Plan was filed, public water service was contemplated. Shortly after the Preliminary Plan was approved, the Township and Authority entered the Addendum formalizing the extension of potable water service to the Property. Critically, the Addendum

---

[7] Even assuming the *revised* Final Plan replaced the version filed on May 9, 2023, the revision is essentially the same as the Preliminary Plan and the Township has done a poor job of illustrating otherwise or explaining how the modifications have significantly altered the Preliminary Plan. The plan from inception to final revision has consistently proposed a 312,120-square-foot commercial warehouse/distribution center building on 43.4 acres, with associated parking, trailer storage spaces, and stormwater management, on topography that has not changed. The balance of the purported differences between the Preliminary Plan and the revised Final Plan were made at the request of the Township to provide more details. *See* R.R. at 223a-30a. As the Pennoni response letter supports, the changes between the Preliminary Plan and the revised Final Plan represent "the addition of engineering details" as requested by the Township. *See Annand*, 634 A.2d at 1161. To conclude otherwise would penalize Developer for making revisions in an attempt to work with the Township, even though it was entitled to proceed based on the terms as approved in the Preliminary Plan, without conditions.

remained in place when the Final Plan was filed. The Township rescinded/terminated the Addendum on May 11, 2023 -- two days *after* the Final Plan was filed. The Township's action of denying the Final Plan on the basis that the Addendum was rescinded/terminated *after* the Final Plan was filed contravenes Section 508(4)(i) of the MPC.

> Section 508(4) of the MPC provides:
>
> Changes in the ordinance shall affect plats as follows: (i) From the time an application for approval of a plat, whether preliminary or final, is duly filed as provided in the subdivision and land development ordinance, and *while such application is pending approval or disapproval, no change or amendment of the zoning, subdivision or other governing ordinance or plan shall affect the decision on such application adversely to the applicant* and the applicant shall be entitled to a decision in accordance with the provisions of the governing ordinances or plans as they stood at the time the application was duly filed. In addition, when a preliminary application has been duly approved, the applicant shall be entitled to final approval in accordance with the terms of the approved preliminary application as hereinafter provided. However, if an application is properly and finally denied, any subsequent application shall be subject to the intervening change in governing regulations.

53 P.S. §10508(4) (emphasis added). As this Court has held, when "an application for subdivision or land development is pending, no change in the applicable ordinances shall adversely affect the municipality's decision on those plans." *Board of Commissioners of Cheltenham Township v. Hansen-Lloyd, L.P.*, 166 A.3d 496, 503 (Pa. Cmwlth. 2017), *aff'd*, 211 A.3d 845 (Pa. 2019); *accord Honey Brook Estates, LLC v. Board of Supervisors of Honey Brook Township*, 132 A.3d 611, 620 (Pa. Cmwlth. 2016) (holding, under Section 508(4), an applicant has a vested right

16

to develop property in accordance with the zoning in effect at the time its application is filed and a landowner cannot be denied this right by a change in zoning.).  We further note:

> A municipality has a legal obligation to proceed in good faith in reviewing and processing development plans. The duty of good faith includes discussing matters involving technical requirements or ordinance interpretation with an applicant, and providing an applicant a reasonable opportunity to respond to objections or to modify plans where there has been a misunderstanding or difference of opinion.

*Id*. at 621 (quoting *Raum v. Board of Supervisors of Tredyffrin Township*, 370 A.2d 798 (Pa. Cmwlth. 1977)); *accord Highway Materials, Inc. v. Board of Supervisors of Whitemarsh Township*, 974 A.2d 539, 544 (Pa. Cmwlth. 2009).  Thus, we conclude that the Township was not permitted to use the Addendum recission/termination as a ground for denial once the Final Plan was pending.  We, therefore, conclude that Developer is entitled to automatic approval of the Final Plan as filed on May 9, 2023.

### B. Code Compliance
### 1. Contentions

In the alternative, the Township argues that the trial court erred by not including "necessary clarity" in the order and by failing to condition approval of the Final Plan upon the plan's compliance with all applicable Township codes and regulations.  Section 508 of the MPC was never intended to prevent municipalities from having the opportunity to review development plans that are woefully incomplete and/or materially modified as a result of third-party agency approvals.

Developer readily admits that it must follow all applicable Township codes and regulations.  However, it argues that, to the extent that the Township

17

intends to use this clarification to obfuscate and delay the Project by denying potable water or asserting novel zoning deficiencies, Developer requests that this Court deny this relief. Developer further asks this Court to direct the Township to reenter the Addendum with the Authority to provide potable water to the Property.

## 2. Analysis

As noted above in footnote 4, we review the Township's decision for errors of law or abuses of discretion, not the trial court's opinion. The Developer is required to follow the law and does not need an order directing the same. Developer will still need to obtain all outside agency reviews and approvals to proceed with the Project, including review and approval from the Authority for water service for the Project. As for the relief requested by Developer, it is beyond our review in this land use appeal.

## IV. Conclusion

Accordingly, we affirm the trial court's order.

_____
MICHAEL H. WOJCIK, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Core5 at Valley Commerce      :
Center, LLC      :
     :
          v.      : No. 588 C.D. 2024
     :
Lowhill Township,      :
     :
          Appellant      :

# **O R D E R**

AND NOW, this 10th day of September, 2025, the order of the Lehigh County Court of Common Pleas, dated April 8, 2024, is AFFIRMED.

_____
MICHAEL H. WOJCIK, Judge